**JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), et al., Plaintiffs,**

v.

**JP MORGAN CHASE & CO., et al., Defendants.**

**No. 12 Civ. 3184(RJS).**

United States District Court, S.D. New York.

March 29, 2013.

Geoffrey Coyle Jarvis, and Deborah A. Elman of Grant & Eisenhofer P.A., New York, NY, for Plaintiffs.

Penny Shane, Allison Joan Cambria, David Allen Castleman, and Robert Andrew Sacks of Sullivan and Cromwell, LLP, New York, NY, for JPM Defendants (unless otherwise noted) and Third–Party Plaintiff JP Morgan Chase Bank, N.A.

Meredith Eve Kotler of Cleary Gottlieb Steen & Hamilton, LLP, New York, NY, for Defendants Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., and Merrill Lynch & Co.

John E. Zummo and Michelle Dianne Velasquez of Vedder Price P.C., Chicago, IL, for Defendant CSE Mortgage, LLC.

Robert F. Serio, Aric Hugo Wu, Jonathan Brian Austin, and Lawrence Jay Zweifach of Gibson, Dunn & Crutcher, LLP, New York, NY, for Defendants Deutsche Bank Securities Inc. and UBS Securities LLC.

Joel Charles Haims and Lashann Moutique DeArcy of Morrison & Foerster LLP, New York, NY, for Defendants Sara Bonesteel, Thomas F. Marano and Michael B. Nierenberg.

Joel Charles Haims and Lashann Moutique DeArcy of Morrison & Foerster LLP, and Robert Andrew Sacks of Sullivan and Cromwell, LLP, New York, NY, for Defendant Marc R. Kittner.

Richard Aframe Edlin, Candace Marie Camarata, and Ronald Daniel of Lefton of Greenberg Traurig, LLP, New York, NY, for Defendant Jeffrey Mayer.

Pamela Rogers Chepiga and Josephine Alice Cheatham of Allen & Overy, New York, NY, for Defendant Samuel L. Molinaro, Jr.

Dani R. James and Jade Anne Burns of Kramer Levin Naftalis & Frankel, LLP, New York, NY, for Defendant Jeffrey L. Verschleiser.

Scott Hu Christensen and William Robert Stein of Hughes Hubbard & Reed LLP, Washington, DC, and Andrew J. Do-

ber and Thomas M. Clark of the Federal Deposit Insurance Corporation, Arlington, VA, for Third Party Defendant Federal Deposit Insurance Corporation.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs [1] bring this suit against a collection of corporate and individual Defendants, alleging violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2) & 77*o*, and New York common law in connection with the sale of a number of residential mortgage-backed securities. Before the Court are four separate motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), submitted by: (1) the JPMorgan Defendants ("JPM Defendants"); [2] (2) Defendant CSE Mortgage, LLC ("CSE"); (3) Banc of America Securities LLC ("BAS") and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill"); and (4) Deutsche Bank Securities Inc. ("DB"), Greenwich Capital Markets, Inc. (n/k/a/ RBS Securities Inc.) ("GCM"), and UBS Securities LLC ("UBS") (collectively, with BAS and Merrill, the "Outside Underwriters"). For the reasons that follow, the Court grants each Defendants' motion to dismiss in its entirety.

### I. BACKGROUND

#### A. Facts

Plaintiffs are nine affiliated insurance companies and investment trusts that, between January 20, 2006 and July 23, 2008, purchased 107 certificates (the "Certificates") as part of eighty-three separate residential mortgage-backed securities transactions ("RMBS" or "Transactions"), representing a face value of $1 billion.[3]

---

**1.** The Plaintiffs include John Hancock Life Insurance Company (U.S.A.); John Hancock Life Insurance Company (U.S.A.) Separate Account 6A; John Hancock Life Insurance Company (U.S.A.) Separate Account 131; John Hancock Funds II; John Hancock Variable Insurance Trust; John Hancock Sovereign Bond Fund; John Hancock Bond Trust; John Hancock Strategic Series; and John Hancock Income Securities Trust.

**2.** The JPM Defendants include: (1) JP Morgan Chase & Co.; (2) JPMorgan Chase Bank, N.A.; (3) J.P. Morgan Mortgage Acquisition Corporation; (4) J.P. Morgan Securities LLC f/k/a/ J.P. Morgan Securities Inc.; (5) J.P. Morgan Acceptance Corporation I; (6) Chase Mortgage Finance Corporation; (7) Chase Home Finance LLC; (8) EMC Mortgage LLC f/k/a EMC Mortgage Corporation; (9) Bear Stearns & Co., Inc.; (10) Bear Stearns Asset Backed Securities I LLC; (11) Structured Asset Mortgage Investments II Inc.; (12) WaMu Asset Acceptance Corporation; (13) Washington Mutual Mortgage Securities Corporation; (14) WaMu Capital Corporation; (15) Long Beach Securities Corporation; and (16) various individual defendants (the "Individual Defendants"). The Individual Defendants are: John Barren, David Beck, Sara Bone-

steel, Domenic A. Borriello, Richard Careaga, Jerome A. Cipponeri, Christine E. Cole, Craig S. Davis, Art Den–Heyer, Marangal I. Domingo, David M. Duzyk, Katherine Garniewski, Troy A. Gotschall, Patricia A. Jehle, Juliana C. Johnson, Rolland Jurgens, Joseph T. Jurkowski, Jr., Michael D, Katz, William A. King, Marc R. Kittner, Michael J. Kula, Thomas G. Lehmann, Stephen Lobo, Richard D. Lodge, Kim Lutthans, Marc K. Malone, Thomas F. Marano, Jeffrey Mayer, Edwin F. McMichael, Samuel L. Molinaro, Jr., Michael B. Nierenberg, Diane Novak, Michael L. Parker, Matthew E. Perkins, Louis Schioppo, Jr., Jeffrey A. Sorensen, Jeffrey L. Verschleiser, Donald Wilhelm, Thomas L. Wind, David H. Zielke, Brian Bernard, Megan M. Davidson, Eric Ferren, and Stephen Fortunato.

**3.** The following facts are taken from the Amended Complaint ("Am. Compl."), unless otherwise noted. In connection with Defendants' four motions to dismiss, the Court also considered the JPM Defendants' opening brief ("JPM Mem."); CSE's opening brief ("CSE Mem."); Plaintiffs' omnibus opposition to the JPM Defendants' and CSE's motions ("Opp'n to JPM/CSE"); the JPM Defendants' reply brief; CSE's reply brief; BAS and Merrill's opening brief ("BAS Mem."); DB, GCM, and

(Am. Compl. ¶¶ 121, 640–746.) Each RMBS was supported by a different pool of mortgage loans and was issued pursuant to certain registration statements and various prospectuses, which described the RMBS. (*Id.* ¶ 5.) The Certificates were created in a multistep process, in which: (1) mortgage loan originators, such as a mortgage lender or a bank, would originate the underlying residential mortgage loans pursuant to underwriter guidelines; (2) a "sponsor" would acquire and aggregate the loans from the loan originators and then sell the loans to a "depositor"; (3) the depositor would then pool the loans and transfer them to a trust for the benefit of investors in exchange for Certificates representing specified interests in the principal and interest streams generated by the pool of loans held by the trust; and (4) the depositor would sell the Certificates to an underwriter for eventual resale to investors in public or private offerings. (*Id.* ¶ 110.) Plaintiffs allege that Defendants served as originators, issuers, sponsors, sellers, depositors, and/or underwriters for the Transactions. (*Id.* ¶¶ 114–21.)

### B. Procedural History

Plaintiffs initiated this action by filing a summons and complaint on January 20, 2012 in New York State Supreme Court, New York County. Before any Defendant was served with the initial complaint, Plaintiffs filed an Amended Complaint on March 2, 2012, alleging violations of the federal securities law and New York common law based on false and misleading statements made concerning the riskiness and creditworthiness of the eighty-three RMBS.

On April 23, 2012, Defendants filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1446. (Doc. No. 1.) On the same date, JPMorgan Chase Bank, N.A. filed a Third–Party Complaint against the Federal Deposit Insurance Corporation ("FDIC") for indemnification of any losses or costs incurred relating to the pre-closing activities of Washington Mutual Bank.[4] (Doc. No. 17.)

On June 29, 2012, each of the four groups of Defendants filed their respective motions to dismiss. (Doc. Nos. 38, 42, 45, 48.) Plaintiffs filed two memoranda of law in opposition to Defendants' four motions on August 24, 2012. (Doc. Nos. 55, 56.) Each of the motions was fully submitted as of September 28, 2012, the date on which Defendants submitted their respective reply briefs. (Doc. Nos. 61, 62, 63, 64.) Thereafter, various parties also provided the Court with supplemental authority to support their positions. (Doc. Nos. 60, 66, 71, 72.)

Each group of Defendants moves to dismiss each of the counts of the Amended Complaint that pertains to it on a variety of grounds, including that Plaintiffs' federal claims are time-barred. (JPM Mem. 11–12; CSE Mem. 11; BAS Mem. 5–6; DB Mem. 8.) Since these federal claims provide the basis for this Court's jurisdiction over this matter, and since the timeli-

---

UBS's opening brief ("DB Mem."); Plaintiffs' omnibus opposition to the Outside Underwriters' motions; BAS and Merrill's reply brief; DB, GCM, and UBS's reply brief; Plaintiffs' Notices of Supplemental Authority, dated September 19, 2012 and October 4, 2012; BAS and Merrill's Notice of Supplemental Authority, dated January 11, 2013; and Plaintiffs' Response to Supplemental Notice of Authority by BAS and Merrill and Notice of Additional Supplemental Authority, dated

January 16, 2013. The Court also considered the declarations, and exhibits attached thereto, submitted in connection with the motions to dismiss. Each of the aforementioned submissions is available on ECF.

4. JPMorgan Chase Bank, N.A. purchased certain assets of Washington Mutual Bank from the FDIC as receiver in September 2008. (*See* JPM Mem. 4.)

ness objection is a threshold issue for those causes of action, the Court considers this question first.

## II. DISCUSSION

### A. Timeliness of Plaintiffs' Securities Act Claims

■ Section 13 of the Securities Act sets forth the time period within which actions pursuant to § 11 or § 12(a)(2) must be commenced:

> No action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(a)(1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale.

15 U.S.C. § 77m. The first sentence in this section is the statute of limitations; because Defendants have not argued that Plaintiffs' claims run afoul of this provision, and there is no dispute that certain tolling doctrines apply with respect to the statute of limitations, the Court does not consider this issue. Defendants do, however, argue that the three-year limit established by the second sentence—the statute of repose—bars all of Plaintiffs' claims under the Securities Act.

According to § 13, the statute of repose begins to run on the effective date of the prospectus supplement for § 11 claims and the date of the sale for § 12(a)(2) claims.

See *Footbridge Ltd. Trust v. Countrywide Fin. Corp.,* 770 F.Supp.2d 618, 623 (S.D.N.Y.2011) (Castel, J.). Here, the effective dates of the Prospectus Supplements for the various Transactions range from 2002 to 2007 (Am. Compl. ¶ 121), and the purchase dates for those transactions range from 2006 to 2008 (*id.* ¶¶ 640–746). Therefore, as this lawsuit was not filed until 2012, absent tolling, Plaintiffs' claims would be barred by the three-year statute of repose. Indeed, Plaintiffs make no argument to the contrary. (*See* Opp'n to JPM/CSE 7–9.)

Plaintiffs argue, however, that their Securities Act claims are timely under the tolling doctrine articulated in *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). (Opp'n to JPM/CSE 7–9.) The *American Pipe* tolling doctrine "has been used to permit a plaintiff to file an action even after the statute of limitations has run, if the plaintiff had relied on a putative class action that was timely filed but ultimately dismissed." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.,* 886 F.Supp.2d 328, 334 (S.D.N.Y.2012) (Keenan, J.).[5] The parties dispute, however, whether *American Pipe* tolling applies equally to statutes of repose.

Courts within this district are split as to whether *American Pipe* tolling applies to the Securities Act's statute of repose. *Compare Int'l Fund Mgmt. S.A. v. Citigroup Inc.,* 822 F.Supp.2d 368, 380–82 (S.D.N.Y.2011) (Stein, J.) (applying *American Pipe* tolling), *and In re Morgan Stanley Mortg. Pass–Through Certificates Litig.,* 810 F.Supp.2d 650, 666–68 (S.D.N.Y. 2011) (Swain, J.) (same), *with Plumbers, Pipefitters & MES Local Union No. 392*

---

**5.** Plaintiffs identify three class actions filed in 2008 in which they were included in the defined class and that allegedly provide a basis for tolling the statute of repose. (*See* Am. Compl. ¶¶ 780–792.)

*Pension Fund,* 886 F.Supp.2d at 333–35 (*American Pipe* tolling does not apply), *Footbridge Ltd. Trust,* 770 F.Supp.2d at 624–27 (same), *and In re Lehman Bros. Sec. & Erisa Litig.,* 800 F.Supp.2d 477, 481–83 (S.D.N.Y.2011) (Kaplan, J.) (same).[6] This question is currently pending before the Second Circuit. *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.,* No. 12–1903 (2d. Cir. filed May 9, 2012).[7] Although the Court has been tempted to await the Circuit's impending ruling, the fact remains that Defendants' motions have been pending for some time. Accordingly, the Court has considered the aforementioned opinions from this district and finds the reasoning in those holding that *American Pipe* tolling does not apply to the Securities Act's statute of repose to be more persuasive.

As an initial matter, the Second Circuit has explained the fundamentally different purposes of a statute of limitations and a statute of repose:

> In general, a statute of repose acts to define temporally the right to initiate suit against a defendant after a legislatively determined time period. Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiffs remedy, but rather defines the right involved in terms of the time allowed to bring suit. Statutes of limitations bear on the availability of remedies and, as such, are subject to equitable defenses ..., the various forms of tolling, and the potential application of the discovery rule. In contrast, statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time. In theory, at least, the legislative bar to

subsequent action is absolute, subject to legislatively created exceptions ... set forth in the statute of repose.

*P. Stolz Family P'ship L.P. v. Daum,* 355 F.3d 92, 102 (2d Cir.2004) (internal citations omitted); *see Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 88 n. 4 (2d Cir.2010) ("Statutes of repose and statutes of limitations are often confused, though they are distinct. A statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued, often subject to tolling principles. By contrast, a statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts.") (internal citations omitted).

An examination of both the plain meaning and structure of § 13 supports the conclusion that the statute of repose is not subject to equitable tolling. The first part of the section, the statute of limitations, requires that actions pursuant to § 11 or § 12(a)(2) be brought within one year of when the untrue statement or omission was discovered or should have been discovered. 15 U.S.C. § 77m. But the very next sentence refines that limitation: "*In no event* shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the" relevant offering or sale date. *Id.* (emphasis added). The plain meaning of the statute of repose places an absolute bar on claims filed more than three years after the relevant trigger date. Interpreting the second sentence to be subject to the same tolling principles as

---

6. In fact, numerous federal courts throughout the country have weighed in on this question. *See, e.g., Arivella v. Lucent Techs., Inc.,* 623 F.Supp.2d 164, 177 (D.Mass.2009) (citing cases nationwide coming out both ways).

7. On December 5, 2012, the Second Circuit heard argument as to this issue (*see* No. 12–1903, Doc. No. 99), but as of March 29, 2013, the court had not yet issued a decision.

the first would either render one of the two sentences entirely superfluous or make the two directly contradictory. Indeed, the Supreme Court reached the same conclusion in interpreting a section of the Securities Exchange Act of 1934 with a "1–and–3–year structure" akin to § 13 of the Securities Act. *Lampf v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) ("Notwithstanding this venerable principle [that time limitations are customarily subject to tolling], it is evident that the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure" used in the securities laws.).

In arguing that *American Pipe* tolling applies to the statute of limitations and statute of repose here, Plaintiffs contend that the statutory language at issue in *American Pipe* "was yet more emphatic and absolute" than that of § 13. (Opp'n to JPM/CSE 8 (citing 15 U.S.C. § 15(b) ("Any action to enforce any cause of action under [the antitrust laws] shall be forever barred unless commenced [within the statutory period].")).) This argument is immediately suspect because it does not acknowledge the distinction between a statute of limitations and a statute of repose. And, perhaps because of this oversight, the argument about the nature of the language at issue misses the point. The clear meaning of the statute of repose in § 13 arises not merely from the use of the words "in no event" but also from the words' context—that is, they immediately follow a sentence that establishes a one-year statute of limitations. Any fair attempt to interpret § 13 must consider the two sentences, and two concepts, in conjunction; doing so, as described above, compels the conclusion that the statute of repose establishes an absolute bar to claims filed after three years.

In fact, the principle that equitable tolling does not apply to a statute of repose such as that in § 13 is well settled. In *Lampf,* the Supreme Court held that "[t]he 3–year limit is a period of repose inconsistent with tolling" and noted "the inescapable conclusion that Congress did not intend equitable tolling to apply in actions under the securities laws." 501 U.S. at 363, 111 S.Ct. 2773 ("Because the purpose of the 3–year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period."). The Second Circuit case cited above, *P. Stolz Family P'ship L.P.,* involved the interpretation of § 13 and similarly noted that unlike statutes of limitations which "are subject to equitable defenses" and "various forms of tolling," statutes of repose "affect the availability of the underlying right" and that right is "no longer available on the expiration of the specified period of time." 355 F.3d at 102 (internal citations omitted).

In light of the clear precedent that equitable tolling does not apply to statutes of repose, the courts applying *American Pipe* tolling to the § 13 statute of repose generally argue that this form of tolling is not in fact "equitable tolling." The first such argument is that "*American Pipe* tolling is a species of legal tolling, in that it is derived from a statutory source, in this case Rule 23 [of the Federal Rules of Civil Procedure]" and thus may be applied to statutes of repose. *In re Morgan Stanley Mortg. Pass–Through Certificates Litig,* 810 F.Supp.2d at 667 (internal citations omitted). The Court is not persuaded by this argument, however, because these opinions fail to point to any evidence that Rule 23 established such a tolling rule or that Rule 23 was intended to alter how statutes of repose are applied. Certainly, *American Pipe* offers no such evidence. *See In re Lehman Bros. Sec. & Erisa Litig.,* 800 F.Supp.2d at 482 ("while the Supreme Court had Rule 23's goals in mind when it decided *American Pipe,* the rule makes no mention whatsoever of the

tolling principle announced in that case."); *Footbridge Ltd. Trust*, 770 F.Supp.2d at 626 ("*American Pipe* noted that a purpose of Rule 23 is to promote judicial economy and efficiency.... But nowhere in *American Pipe* does the Court read the text of Rule 23 as having embedded within it language that creates a class action tolling rule.") (internal citations omitted). In addition, the language of the decision in *American Pipe* itself seems to contradict this notion: "the tolling rule *we establish here* is *consistent* both with the procedures of Rule 23 and with the proper function of the limitations statute." *Am. Pipe & Constr. Co.*, 414 U.S. at 555, 94 S.Ct. 756 (emphasis added). Therefore, the Court does not find that Rule 23 established the *American Pipe* tolling doctrine; rather, the Supreme Court, in a case named *American Pipe*, established this doctrine. Again, the Second Circuit has noted that "the legislative bar to subsequent action [established by a statute of repose] is absolute, subject to legislatively created exceptions ... set forth *in the statute of repose*;" not in other statutes or rules. *P. Stolz Family P'ship L.P.*, 355 F.3d at 102 (emphasis added and internal citations omitted). Here, of course, the statute of repose is utterly silent as to any exceptions and is emphatic that "[i]n no event shall any such action be brought ... more than three years after the" offer or sale. Thus, *American Pipe* tolling was not created by the language of § 13, and cannot even be said to be "legislatively created."

The next variation of the argument that *American Pipe* tolling is not "equitable tolling" emphasizes the differences between these two types of tolling. By this reckoning, "[e]quitable tolling is rooted in common law principles and permits a court—after weighing the equities in the discrete case before it—to authorize plaintiffs to bring actions outside a limitations period." *In re Morgan Stanley Mortg. Pass–Through Certificates Litig.*, 810 F.Supp.2d at 667. In other words, "equitable tolling" concerns situations "when the plaintiff demonstrates ignorance of the fraud without any fault or want of diligence or care on his part"—as was the issue in *Lampf, Int'l Fund Mgmt. S.A.*, 822 F.Supp.2d at 381 (internal citations omitted). "*American Pipe* tolling, by contrast, does not extend equitable relief based on an individualized assessment of fairness" but rather rests on the idea that class members are viewed as having instituted their own actions and thus the statute of limitations does not run against them during that time. *In re Morgan Stanley Mortg. Pass–Through Certificates Litig.*, 810 F.Supp.2d at 667 (internal citations omitted).

The Court fully agrees that equitable tolling comes in many forms and, indeed, the specific form of tolling established by *American Pipe* is different from that in *Lampf* for all the reasons discussed in these opinions. However, whatever those differences might be, *American Pipe* tolling is still fundamentally about permitting a plaintiff who has not otherwise filed a timely claim to do so and thus is still equitable in nature. Indeed, the Supreme Court itself has labeled it as such. *See Young v. United States*, 535 U.S. 43, 49–50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (citing *American Pipe* as an example of limitations periods being subject to "equitable tolling" so long as it is not inconsistent with the relevant statute); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n. 3, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (*American Pipe* is an example of "equitable tolling" in which the filing of a defective class action tolled the limitations period for purported class members). In *dicta*, the Second Circuit also has described the tolling in *American Pipe* as "equitable tolling." *See Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 322–23 (2d Cir.2004). Therefore, the

Court is not persuaded that the characteristics of *American Pipe* tolling highlighted above take it out of the category of "equitable tolling."

The final argument advanced in favor of applying *American Pipe* tolling to the statute of repose in § 13 is that doing so would be consistent with the policies of Rule 23 and not inconsistent with the purpose of the statute of repose. *See, e.g., In re Morgan Stanley Mortg. Pass–Through Certificates Litig.*, 810 F.Supp.2d at 667 ("When choosing between competing conceptions of the equitable-legal tolling divide, a court must consider whether tolling the limitation in a given context is consonant with the legislative scheme.") (internal citations omitted). As Judge Stein explained, "[i]n the absence of tolling, a putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule *of American Pipe* were designed to avoid. The same reasoning applies to the statute of repose." *Int'l Fund Mgmt. S.A.*, 822 F.Supp.2d at 380 (internal citations omitted); *see also In re Morgan Stanley Mortg. Pass–Through Certificates Litig.*, 810 F.Supp.2d at 668 ("*American Pipe* tolling is ... consistent with the goals of efficiency and judicial economy.").

The Court finds this argument unavailing. First, it is not obvious to this Court that applying *American Pipe* tolling to the statute of repose in § 13 is consistent with the legislative scheme created by Congress. To the contrary, the plain meaning of the statute of repose in question seems to bar any type of tolling. Moreover, if Rule 23 is read to require application of *American Pipe* tolling to statutes of repose, it would also run afoul of the Rules

Enabling Act. *See In re Lehman Bros. Sec. & Erisa Litig.*, 800 F.Supp.2d at 482 ("[E]ven if Rule 23 did include or imply such a tolling rule, the Federal Rules of Civil Procedure may 'not abridge, enlarge or modify any substantive right.' ") (quoting 28 U.S.C. § 2072(b)). Thus, the Court does not find extending *American Pipe* to the § 13 statute of repose to be consistent with Congress' intent.

Of course, there may be good policy reasons for applying *American Pipe-style* tolling in situations such as this one. *See Int'l Fund Mgmt. S.A.*, 822 F.Supp.2d at 380–81. Nevertheless, such policy considerations are not the province of the federal courts, but of Congress, which remains free to apply *American Pipe-style* tolling to the statute of repose in § 13 of the Securities Act. Until Congress chooses to do so, this Court declines to take such a step that would both contradict the plain meaning of the statute of repose in question and contravene controlling precedent that the statute of repose is not subject to equitable tolling.

Accordingly, the Court rejects Plaintiffs' argument that *American Pipe* tolling applies to the three-year statute of repose found in § 13, and thus finds that all of Plaintiffs' claims under the Securities Act are time-barred. Therefore, the Court grants Defendants' motions to dismiss these claims.

### B. Plaintiffs' Common Law Claims

In addition to their federal claims, Plaintiffs have alleged several claims under New York common law. Section 1367(a) of Title 28 of the United States Code gives federal courts supplementary jurisdiction over state claims that are closely related to the claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). Under § 1367(c) however, a district court may decline to exercise supplementary jurisdiction where "the district

court has dismissed all claims over which it has original jurisdiction." Several factors guide the district court's discretion, namely, the "'values of judicial economy, convenience, fairness, and comity.'" *Kolari v. N.Y.–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state law claims." *Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. 614. This is precisely such a "usual case."

As in *Kolari*, "Plaintiffs' federal-law claims [have been] eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and [the Court] can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a surer-footed reading of applicable law." *Kolari*, 455 F.3d at 123 (internal quotation marks and footnote omitted). Indeed, the reasons to decline exercising jurisdiction over Plaintiffs' common law claims may be even more compelling in this case, since Plaintiffs originally commenced this action in state court, and it was Defendants who decided to remove the matter to this Court. Now that the Court has dismissed those causes of action upon which Defendants justified transferring the action, it would be inappropriate for this Court to retain Plaintiffs' other claims, particularly since those claims would be subject to the heightened pleading standards applicable to federal actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Fed.R.Civ.P. 9(b). Accordingly, having dismissed Plaintiffs' federal law claims, the Court refuses to exercise juris-diction over Plaintiffs' remaining common law claims.

### III. CONCLUSION

For the reasons set forth above, each of the Defendants' motions is GRANTED. The Court dismisses Plaintiffs' federal causes of action under the Securities Act with prejudice and Plaintiffs' state law claims without prejudice to refiling in state court.

Nevertheless, in light of the fact that the Second Circuit is likely to rule on the *American Pipe* tolling issue imminently, as well as the fact that the third party action against the FDIC remains pending and apparently unaffected by the Court's ruling, the parties are ordered to submit a joint letter within seven days indicating how they wish to proceed, including whether they wish to stay this ruling until the Circuit issues its decision in *International Fund Management S.A.*

The Clerk of the Court is respectfully requested to terminate the motions at Doc. Nos. 38, 42, 45 and 48.

SO ORDERED.