11-2998-cv(L)
*In re IndyMac Mortgage-Backed Sec. Litig.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued On: December 5, 2012                    Decided: June 27, 2013)

Docket Nos.

11-2998-cv(L), 11-3036-cv(CON).

─────────────────────────────────

POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, individually, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, on behalf of all others similarly situated, WYOMING STATE TREASURER, WYOMING RETIREMENT SYSTEM,

*Plaintiffs*,

GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT, LOS ANGELES COUNTY EMPLOYEES RETIREMENT SYSTEM aka "LACERA," PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI "PERS,"

*Proposed Intervenors-Appellants*,

v.

INDYMAC MBS, INC., DEUTSCHE BANK SECURITIES INC., GOLDMAN, SACHS & COMPANY, MORGAN STANLEY & COMPANY, CREDIT SUISSE SECURITIES (USA) LLC,

*Defendants-Appellees*,

RESIDENTIAL ASSET SECURITIZATION TRUST 2006-A5CB, et al.,

*Defendants.**

─────────────────────────────────

Before: CABRANES, RAGGI, and CARNEY, *Circuit Judges*.

─────────────

* The Clerk of the Court is directed to amend the official caption to conform to the listing of the parties above.

We consider here an appeal from an order of the United States District Court for the Southern District of New York. *See In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) ("*IndyMac II*") (Lewis A. Kaplan, *Judge*). The lead plaintiff and proposed intervenors in this case allege misrepresentations and omissions in the offering and sale of certain financial instruments which they purchased. This appeal presents an unsettled question of law: whether the tolling rule set forth by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*")—that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," *id.* at 554—applies to the three-year statute of repose in Section 13 of the Securities Act of 1933, as amended, 15 U.S.C. § 77m. This appeal also requires us to decide whether non-party members of a putative class can avoid the effect of a statute of repose using the "relation back" doctrine of Federal Rule of Civil Procedure 15(c) to amend the class complaint and intervene in the action as named parties.

We hold that: (1) *American Pipe*'s tolling rule does not apply to the three-year statute of repose in Section 13; and (2) absent circumstances that would render the newly asserted claims independently timely, neither Rule 24 nor the Rule 15(c) "relation back" doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction. In practical terms, the litigants in these cases may not circumvent Section 13's statute of repose by invoking *American Pipe* or Rule 15(c). Accordingly, we **AFFIRM** the June 21, 2011 order of the District Court, insofar as it partially denied motions to intervene by proposed intervenors-appellants.

ROBIN F. ZWERLING (Jeffrey C. Zwerling, Justin M. Tarshis, *on the brief*), Zwerling, Schachter & Zwerling, LLP, New York, NY, *for Proposed Intervenor-Appellant General Retirement System of the City of Detroit*.

2

JOSEPH J. TABACCO JR. (Patrick T. Egan, *on the brief*), Berman DeValerio, Boston, MA, *for Proposed Intervenor-Appellant Los Angeles County Employees Retirement System.*

Michael J. Miarmi, Joy A. Kruse, Lieff, Cabraser, Heimann & Bernstein, LLP, New York, NY, *for Proposed Intervenor-Appellant Public Employees' Retirement System of Mississippi.*

William R. Stein, Scott H. Christensen, Hughes Hubbard & Reed LLP, Washington, DC, *for Defendant-Appellee IndyMac MBS, Incorporated.*

ROBERT F. SERIO (Aric H. Wu, Jason W. Myatt, Dean J. Kitchens, *on the brief*), Gibson, Dunn & Crutcher LLP, Los Angeles, CA, *for Defendants-Appellees Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., and Morgan Stanley & Co. LLC.*

Lawrence M. Rolnick, Thomas E. Redburn, Jr., Sheila Sadighi, Lowenstein Sandler PC, New York, NY, *for Amicus Curiae W.R. Huff Asset Management Co., LLC in support of Intervenors-Appellants.*

JOSÉ A. CABRANES, *Circuit Judge*:

This appeal presents an unsettled question of law: whether the tolling rule set forth by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*")—that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," *id.* at 554—applies to the three-year statute of repose in Section 13 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77m.[1]  In addition, we are called upon to

---

[1] Section 13 of the Securities Act states in full:

No action shall be maintained to enforce any liability created under section 77k or 77*l*(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery

3

decide whether non-party members of a putative class can avoid the effect of a statute of repose using the "relation back" doctrine of Federal Rule of Civil Procedure 15(c) to amend the class complaint and intervene in the action as named parties.[2]

This appeal comes to us from an order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying, in relevant part, proposed intervenors-appellants' motions to intervene.[3] *See In re IndyMac Mortgage-Backed Sec. Lit.*, 793 F. Supp. 2d 637 (S.D.N.Y. 2011) ("*IndyMac II*"). The lead plaintiff and other putative class members alleged that defendants had made fraudulent misrepresentations and omissions in the offering and sale of certain financial instruments which they purchased. Following the District Court's dismissal of certain

---

should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l*(a)(1) of this title, unless brought within one year after the violation upon which it is based. *In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.*

15 U.S.C. § 77m (emphasis supplied). As we explain below, *see* Part II.B.ii., *post*, the emphasized text is understood to be a "statute of repose," *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 140-41 (2d Cir. 2013), meaning that it "extinguishes [a] cause of action . . . after a fixed period of time . . . regardless of when the cause of action accrued," as opposed to a statute of limitations, which "establishes the time period within which lawsuits may be commenced after a cause of action has accrued," *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998).

[2] Rule 15(c)(1) states:

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

[3] This appeal was originally argued in tandem with an appeal from *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011) ("*IFM*"). The parties in the *IFM* action, however, have since stipulated to a withdrawal of their appeal with prejudice.

claims, as well as the expiration of the three-year statute of repose under Section 13, several putative class members sought to intervene in the action to revive the dismissed claims on either of two theories: (1) that the *American Pipe* tolling rule operated to preserve their right to sue, or (2) that Rule 15(c) of the Federal Rules of Civil Procedure allowed them to "relate back" their otherwise untimely claims to the surviving claims in the class complaint. The District Court rejected these two theories and denied the motions to intervene as barred under Section 13's statute of repose. This appeal by proposed intervenors-appellants followed.

We hold that: (1) *American Pipe*'s tolling rule does not apply to the three-year statute of repose in Section 13; and (2) absent circumstances that would render the newly asserted claims independently timely, neither Federal Rule of Civil Procedure 24 nor the Rule 15(c) "relation back" doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction. In practical terms, the proposed intervenors may not circumvent Section 13's statute of repose by invoking *American Pipe* or Rule 15(c). Accordingly, we **AFFIRM** the June 21, 2011 order of the District Court, insofar as it partially denied motions to intervene by the proposed intervenors.

## I. BACKGROUND

This appeal arises from two securities class actions, consolidated by the District Court, asserting claims for violations of Sections 11, 12(a) and 15 of the Securities Act[4] against IndyMac

---

[4] Section 11 of the Securities Act, codified at 15 U.S.C. § 77k, provides for civil liability for false or misleading registration statements, and states, in relevant part, that

[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue . . . .

MBS, Inc. ("IndyMac MBS"), an issuer of mortgage-backed securities, and certain of its officers, directors, and underwriters (jointly, "defendants"). As relevant here, IndyMac MBS issued securities known as mortgage pass-through certificates ("Certificates") "in 106 different offerings pursuant to three registration statements and the related prospectuses and prospectus supplements."[5] *IndyMac*, 718 F. Supp. 2d 495, 498 (S.D.N.Y. 2010) ("*IndyMac I*"). The Police and Fire Retirement System of the City of Detroit ("Detroit PFRS") and the Wyoming State Treasurer and the Wyoming Retirement System (jointly, "Wyoming" or "Wyoming entities") commenced two separate putative class actions against the IndyMac defendants on behalf of asserted class members who had purchased Certificates in some of the 106 offerings. The District Court then consolidated the Detroit PFRS and Wyoming actions, and appointed Wyoming lead plaintiff of the consolidated

---

15 U.S.C. § 77k(a). Section 12(a)(2) of the Securities Act, codified at 15 U.S.C. § 77*l*(a)(2), provides for civil liability "in connection with prospectuses and communication," and states that:

> Any person who . . . offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, . . . shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(a)(2). Section 13 of the Securities Act, codified at 15 U.S.C. § 77*o*, extends joint and several liability to persons who "control[ ] any person liable under [Sections 11 and 12(a)]" of the Securities Act. *See* 15 U.S.C. § 77*o*(a).

[5] A mortgage pass-through certificate is "a type of mortgage-backed security that entitles its owner to a portion of the revenue stream generated by an underlying pool of residential mortgage loans." *IndyMac II*, 793 F. Supp. 2d 637, 640-41 (S.D.N.Y. 2011); *see also Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, No. 12-1640-cv, slip op. at 4 (2d Cir. Apr. 19, 2013). Judge Kaplan explained that:

> IndyMac Bank originated or acquired the individual mortgage loans that underlie the Certificates. The loans then were transferred to IndyMac MBS, which bundled them into groups, or pools. The pools were transferred to issuing trusts, which created the Certificates. The issuing trusts then transferred the Certificates to IndyMac MBS which, in turn, sold them to the specific underwriters for each offering. After the Certificates were rated by rating agencies, the underwriters offered them to investors.

*IndyMac II*, 793 F. Supp. 2d at 641.

action, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4.[6] Although Wyoming was the only plaintiff named in the consolidated action, the Amended Consolidated Complaint ("Amended Complaint") raised claims on behalf of other asserted class members, who were purchasers of the IndyMac Certificates.

On June 21, 2010, the District Court dismissed for lack of standing all claims in the Amended Complaint arising from the offerings of securities not purchased by the Wyoming entities, who are the lead and sole named plaintiffs. *IndyMac I*, 718 F. Supp. 2d at 501. The District Court explained that, as in any lawsuit, the named plaintiffs must demonstrate constitutional standing, and that the Wyoming entities had failed to make the necessary showing of injury as to the offerings of securities that they did not purchase. *Id.* (relying on an earlier District Court opinion in separate mortgage-backed securities litigation).

The dismissed claims included those involving securities purchased by Detroit PFRS and by other members of the asserted class, none of whom were named plaintiffs. In addition to Detroit PFRS, five members of the asserted class—(1) the City of Philadelphia Board of Pensions and Retirement ("Philadelphia"); (2) the Los Angeles County Employees Retirement Association ("LACERA"); (3) the Public Employees' Retirement System of Mississippi ("PERS"); (4) the Iowa Public Employees' Retirement System ("Iowa"); and (5) the General Retirement System of the City of Detroit ("Detroit Retirement")—subsequently moved to intervene in the action, pursuant to Federal Rule of Civil Procedure 24,[7] to assert claims with respect to the Certificates that those

---

[6] The PSLRA states, in pertinent part, that "[n]ot later than 90 days after the date on which a notice [to members of the purported plaintiff class] is published . . . [the district court] shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u–4(a)(3)(B)(i).

[7] In relevant part, Rule 24 provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

entities had purchased, but which the named Wyoming plaintiffs had not purchased.[8]  Although the three-year period of repose in Section 13 had run on their claims, these putative plaintiffs invoked the tolling rule set forth in *American Pipe*, where, as noted above, the Supreme Court held that "the commencement of a class action suspends the applicable *statute of limitations* as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," 414 U.S. at 554 (emphasis supplied).  The putative plaintiffs argued that the *American Pipe* tolling rule, which has long been accepted in the context of statutes of limitations, applied equally to the statute of repose in Section 13.  The putative plaintiffs further argued that, in the event that *American Pipe* tolling did not apply, it could nonetheless "relate back" its proposed amended complaint to the Amended Complaint by operation of Federal Rule of Civil Procedure Rule 15(c), *see* note 2, *ante*, despite the expiration of the three-year period for bringing these claims.

The District Court denied the motions to intervene in a thorough and careful memorandum opinion of June 21, 2011, reasoning that the Section 13 repose period had expired and could not be tolled under *American Pipe* or extended by operation of Rule 15(c).  *See Indymac II*, 793 F. Supp. 2d 637.  Three of the five putative plaintiffs—Detroit Retirement, LACERA, and PERS—filed a notice of appeal as proposed intervenors to this Court on July 20, 2011.[9]

## II. DISCUSSION

### A. Standards of Review

We review *de novo* a district court's denial of a motion to dismiss, *see, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009), and its denial of a motion to intervene for an "abuse of discretion," *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005).  To the extent that our

---

[8] It is worth underscoring that Detroit PFRS and Detroit Retirement are distinct legal entities.  *See Indymac II*, 793 F. Supp. 2d at 649; *see also* note 18, *post*, and accompanying text.

[9] Our jurisdiction over the order denying the proposed intervenors' motion to intervene is provided by 28 U.S.C. § 1291.  *See* 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1923 (3d ed. 2005) (collecting cases).

analysis requires us to review interpretations of a statute, we do so *de novo*. *See United States v. Robles*, 709 F.3d 98, 99 (2d Cir. 2013) ("We review *de novo* a district court's decision resolving a question of statutory interpretation."); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law . . . ." (alteration and internal quotation marks omitted)).

## B. Legal Framework

### i. *American Pipe* tolling

The principal issue before us is whether the tolling rule set forth by the Supreme Court in *American Pipe* and its progeny applies to the three-year statute of repose in Section 13 of the Securities Act. The plaintiffs in *American Pipe* originally instituted a timely putative class-action antitrust suit, which was dismissed by the district court in that case for failing to satisfy the prerequisite of "numerosity," as required for certification of a class under Rule 23(a)(1) of the Federal Rules of Civil Procedure.[10] 414 U.S. at 543. Soon after, the district court denied the motions to intervene—filed pursuant to Rule 24, *see* note 7, *ante*, by proposed members of the asserted class—on the ground that the applicable statute of limitations, Section 4B of the Clayton Act,[11] had run during the pendency of the litigation. *See American Pipe*, 414 U.S. at 543-44.

---

[10] In relevant part, Federal Rule of Civil Procedure 23 provides:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > **(1)** the class is so numerous that joinder of all members is impracticable;
> >
> > **(2)** there are questions of law or fact common to the class;
> >
> > **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > **(4)** the representative parties will fairly and adequately protect the interests of the class.

[11] Section 4B of the Clayton Act provides, in pertinent part, that "[a]ny action to enforce any cause of action [under the antitrust laws] shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b.

The Court of Appeals for the Ninth Circuit reversed the district court's denial of the motions to intervene, concluding that the denial of class certification could not "strand" asserted members of the class for whom the statute of limitations had run while the case was pending. *Id.* at 544-45. The Supreme Court then affirmed the Ninth Circuit's decision, holding that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.

In reaching this conclusion, the *American Pipe* Court relied heavily on Rule 23, reasoning that a contrary holding would "frustrate the principal function of a class action" and create a "multiplicity of activity which Rule 23 was designed to avoid."[12] *Id.* at 551; *see also id.* at 555 (suggesting that tolling derived from Court's "interpretation of the Rule"). The *American Pipe* Court, however, also seemed to rely on the equitable power of the courts to toll statutes of limitations. For instance, it

---

[12] Rule 23(b) outlines the types of permissible class actions:

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

observed that "[i]n recognizing *judicial power* to toll statutes of limitation in federal courts we are not breaking new ground." *Id.* at 558 (emphasis supplied); *see also id.* at 558 n.29 (concluding that "judicial tolling of the statute of limitations does not abridge or modify a substantive right"). Ultimately, the *American Pipe* Court stated that "the tolling rule we establish here is consistent both with the procedures of Rule 23 and with the proper function of the limitations statute." *Id.* at 555.

In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court clarified that the *American Pipe* tolling rule applies not only to putative class members who seek to intervene in an action, but also to would-be class members who later file their own independent actions. *Id.* at 353-54; *see also Joseph v. Wiles*, 223 F.3d 1155, 1167 (10th Cir. 2000). In so doing, the *Crown* Court explained the rationale for the *American Pipe* tolling doctrine:

> The *American Pipe* Court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights. Only by intervening or taking other action prior to the running of the statute of limitations would they be able to ensure that their rights would not be lost in the event that class certification was denied. . . . [In the absence of tolling,] [a] putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Crown*, 462 U.S. at 350–51.

Proposed intervenors in this appeal now seek to apply the tolling rule of *American Pipe* to the statute of repose provision in Section 13.

#### ii. Section 13 as a Statute of Repose

Although "[s]tatutes of repose and statutes of limitations are often confused[,] . . . they are [nonetheless] distinct" and serve distinct purposes. *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010); *see also City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011) (noting a difference in the "basic purpose" of a statute of limitations as contrasted to a statute of repose). As we recently explained:

11

Statutes of limitations limit the availability of remedies and, accordingly, may be subject to equitable considerations, such as tolling, or a discovery rule. In contrast, statutes of repose affect the underlying right, not just the remedy, and thus they run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action.

*Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 140 (2d Cir. 2013) (internal citations and quotation marks omitted). In other words, while statutes of limitations are "often subject to tolling principles," a statute of repose "*extinguishes* a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts." *Ma*, 597 F.3d at 88 n.4.

Thus, in contrast to statutes of limitations, statutes of repose "create[] a *substantive* right in those protected to be free from liability after a legislatively-determined period of time." *Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) (emphasis supplied) (quotation marks omitted); *see also P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("*Stolz*") ("Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit."). This conceptual distinction carries significant practical consequences. For instance, "a statute of repose may bar a claim *even before the plaintiff suffers injury*, leaving her without any remedy." *Fed. Hous. Fin. Agency*, 712 F.3d at 140 (emphasis supplied) (relying on *Stolz*, 355 F.3d at 103, and *Stuart*, 158 F.3d at 627); *see also McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011). And, as most important here, a statute of repose is "subject [only] to legislatively created exceptions," *Stolz*, 355 F.3d at 102 (quotation marks omitted), and not to equitable tolling, *Fed. Hous. Fin. Agency,* 712 F.3d at 140 (internal alterations omitted).

Section 13 of the Securities Act contains two limitations periods.[13] *See* note 1, *ante.* The first—a statute of limitations—states, in relevant part, that "[n]o action shall be maintained to

---

[13] We note that "[a]lthough statutes of limitations and statutes of repose are distinct in theory, the courts—including the Supreme Court and this Court—have long used the term 'statute of limitations' to refer also to statutes of repose, including specifically with respect to § 13 of the Securities Act." *Fed. Hous. Fin. Agency*, 712 F.3d at 142-43 & n.3 (referring, *inter alia*, to *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976)); *see also In re WorldCom Sec. Litig.*, 496 F.3d

enforce any liability . . . unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or . . . within one year after the violation upon which it is based." 15 U.S.C. § 77m. As relevant here, the second limitations period of Section 13—a statute of repose—states that "[i]n no event shall any such action be brought to enforce a liability . . . more than three years after the [underlying] security was bona fide offered to the public, or . . . more than three years after [its] sale." *Id.*

Courts have repeatedly recognized that the three-year limitations period in Section 13 is a statute of repose. *See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360, 362 (1991) ("*Lampf*") (referring to Section 13 as a "3-year period of repose"); *Fed. Hous. Fin. Agency*, 712 F.3d at 140; *Stolz*, 355 F.3d at 96. In so doing, they have also emphasized that, as a statute of repose, the three-year period in Section 13 is said to be "absolute" and not subject to equitable tolling. For instance, the Supreme Court in *Lampf* noted that Section 13's three-year limitation "is a period of repose *inconsistent* with tolling," and reiterated that the "purpose of the 3-year limitation is clearly to serve as a cutoff," to which "tolling principles" do not apply. *Lampf*, 501 U.S. at 363 (emphasis supplied). We have similarly recognized that "a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *Stolz*, 355 F.3d. at 102-03; *see also Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994) ("The three-year period is an *absolute limitation* which applies whether or not the investor could have discovered the violation." (emphasis supplied)); *see generally* 2 T. Hazen, Law of Securities Regulation § 7.10[4] (6th ed. 2011) ("Section 13 is not only a statute of limitations but also operates as a statute of repose. There is an absolute maximum of three years in order to

245, 250 (2d Cir. 2007) (referring to both the one-year and three-year periods in Section 13 generically as "statutes of limitations"). This overlapping (and sometimes imprecise) nomenclature, however, does not alter the "distinct" character of the two concepts. *Ma*, 597 F.3d at 88 n.4. Nor does it compel a conclusion that *American Pipe*'s reference to tolling "limitations" periods extends to repose periods, a question properly answered on its own merits.

13

prevent stale claims. The three-year repose period is absolute in that it cannot be extended by applying equitable tolling principles.").

## C. Application of *American Pipe* to Section 13's Statute of Repose

The Supreme Court's opinion in *American Pipe* does not explicitly state whether the Court was recognizing "judicial tolling," grounded in principles of equity, or statutory tolling (or, "legal" tolling), based on Rule 23.[14]  *See Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 n.6 (2012) (noting that "[a]lthough [*American Pipe*] did not employ the term 'legal tolling,' some federal courts have used that term to describe our holding on the ground that the rule 'is derived from a statutory source,' whereas equitable tolling is 'judicially created'").  Judicial power to toll statutes of limitations arises from an "exercise of a court's equity powers," traditionally used to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (internal quotation marks omitted).  On the other hand, statutory tolling, as the name suggests, derives from a statutory, or "legal," source. *See Credit Suisse Sec.*, 132 S. Ct. at 1419 n.6; *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 536 (9th Cir. 2011).  The parties make much of this distinction because, as explained above, if *American Pipe*'s tolling rule is "equitable" in nature, it does not apply to statutes of repose, whereas if it is statutory or "legal" in nature, it may.

As discussed in Part II.B.i, *ante*, the *American Pipe* decision contains conflicting indications of the source of authority for its tolling rule, and the Supreme Court's subsequent statements on the matter—all in *dicta*—provide little clarity.[15]  The Courts of Appeals are divided on this issue.  *See*

---

[14] The Federal Rules of Civil Procedure, including Rule 23, "have 'the force [and effect] of a federal statute.'" *Bright v. United States*, 603 F.3d 1273, 1279 (Fed. Cir. 2010) (alteration in *Bright*) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941)).

[15] *Compare Credit Suisse Sec.*, 132 S. Ct. at 1419 n.6 (2012) (noting the use of the term "legal tolling" among "some federal courts" to characterize *American Pipe* tolling), *with Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 n.10 (2011) (noting that *American Pipe*'s holding is "specifically grounded in policies of judicial administration,"), *and Young v. United States*, 535 U.S. 43, 49 (2002) (citing *American Pipe* for the proposition that limitations periods are "customarily subject to equitable

14

*Albano*, 634 F.3d at 535 ("Among the issues on which there is no consensus is whether *American Pipe* tolling should be characterized as a legal tolling doctrine or as an equitable one."); *compare Bright v. United States*, 603 F.3d 1273, 1282, 1285-86 (Fed. Cir. 2010) (describing *American Pipe* as "statutory" tolling), *and Joseph*, 223 F.3d at 1167 (10th Cir.) ("legal" tolling), *with Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006) ("The *American Pipe/Crown, Cork & Seal* equitable tolling rule is a limited exception to the universal rule that statutes of limitations are impervious to equitable exceptions."), *and Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004) (referring, *in dicta*, to *American Pipe* as an instance where "equitable tolling has been held appropriate"). Experienced and capable judges of the district courts in our Circuit have similarly drawn disparate conclusions and are without consensus.[16]

But we need not try to divine any hidden meanings in *American Pipe*. If its tolling rule is properly classified as "equitable," then application of the rule to Section 13's three-year repose period is barred by *Lampf*, which states that equitable "tolling principles do not apply to that period." 501 U.S. at 363. Even assuming, *arguendo*, that the *American Pipe* tolling rule is "legal"—based upon Rule 23, which governs class actions—we nonetheless hold that its extension to the statute of repose in Section 13 would be barred by the Rules Enabling Act, 28 U.S.C. § 2072(b). The Rules Enabling Act provides the Supreme Court "the power to prescribe general rules of practice and procedure,"

---

tolling" (internal quotation marks omitted)), *and Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n.3 (1990) (referencing *American Pipe* as a case in which the Supreme Court "allowed equitable tolling"), *and Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 338 n.* (1978) (Burger, C.J., concurring) (referring to *American Pipe* while discussing a federal court's authority "to toll a statute of limitations on equitable grounds").

[16] *Compare N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 294 (S.D.N.Y. 2013) (legal tolling), *and In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 159-60 (S.D.N.Y. 2012) (legal tolling), *and Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 380 (S.D.N.Y. 2011) (legal tolling), *and Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08 Civ. 1713(ERK)(WDW), 2011 WL 6182090, at *5 (E.D.N.Y. Dec. 13, 2011) (legal tolling), *and In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 667-68 (S.D.N.Y. 2011 (legal tolling), *with John Hancock Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co.*, No. --- F. Supp. 2d ----, 12 Civ. 3184(RJS), 2013 WL 1385010, at *5 (S.D.N.Y. Mar. 29, 2013) (equitable tolling), *and In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011) (equitable tolling), *and Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 625-26 (S.D.N.Y. 2011) (equitable tolling).

*id.* § 2072(a), including the Federal Rules of Civil Procedure, which "shall not abridge, enlarge or modify any substantive right," *id.* § 2072(b). The use of the term "shall" in the statute's language indicates its mandatory nature; federal courts are bound by its dictates, including in the context of Rule 23. Accordingly, "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (quoting 28 U.S.C. § 2072(b)), and "underscores the need for caution[,] . . . counsel[ing] against adventurous application of" the Rule, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999).

As we have explained above, *see* Part II.B.ii, *ante*, the statute of repose in Section 13 creates a *substantive* right, extinguishing claims after a three-year period. Permitting a plaintiff to file a complaint or intervene after the repose period set forth in Section 13 of the Securities Act has run would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act.[17] Accordingly, our conclusion is straightforward: *American Pipe*'s tolling rule, whether grounded in equitable authority or on Rule 23, does not extend to the statute of repose in Section 13.

We are cautioned by some of the proposed intervenors that a failure to extend *American Pipe* tolling to the statute of repose in Section 13 could burden the courts and disrupt the functioning of class action litigation. *See* Joint Br. and Special App'x for Proposed Intervenors-Appellants LACERA and PERS at 42-43. We are not persuaded. Given the sophisticated, well-counseled litigants involved in securities fraud class actions, it is not apparent that such adverse consequences will inevitably follow our holding. *See, e.g.*, *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 627 (S.D.N.Y. 2011) ("Even without lengthening the repose period, many class actions are

---

[17] In urging otherwise, the *IndyMac* proposed intervenors focus on the *American Pipe* Court's statement, in rejecting what they contend was an identical Rules Enabling Act challenge to tolling in that case, that "[t]he proper test is not whether a time limitation is 'substantive' or 'procedural,' but whether tolling the limitation in a given context is consonant with the legislative scheme." 414 U.S. at 557-58. The *American Pipe* Court, however, noted the procedural nature of Section 4B of the Clayton Act—the statutory provision there at issue, *see* Part II.B.i & note 11, *ante*—before concluding "that a judicial tolling of the statute of limitations does not abridge or modify a substantive right afforded by the antitrust acts." *American Pipe*, 414 U.S. at 558 n.29. It did not consider whether procedural rules authorize tolling of a statute of repose defining a substantive right.

16

resolved or reach the certification stage within the repose period.").  But even if the decision causes some such problem, it is a problem that only Congress can address; judges may not deploy equity to avert the negative effects of statutes of repose.

## D. Rule 15 ("Relation Back") in *IndyMac*

We now turn to the related, but distinct, question of whether the three proposed intervenors—Detroit Retirement, LACERA, and PERS—may intervene to bring certain claims despite the Section 13 statute of repose and the absence of any currently named plaintiff with standing to bring the same claims.  In particular, we consider whether the proposed intervenors may "relate back" their proposed amended complaint to a prior, timely complaint pursuant to Rule 15(c).[18]  *See* Part I, *ante*.

In this case, the statute of repose in Section 13 ordinarily bars the commencement of any new suits after the three-year period has expired.  Accordingly, we proceed to consider only whether proposed intervenors may, as asserted class members in the original complaint, press their otherwise expired claims using Rule 15(c).  For the reasons discussed below, we hold that the Rule 15(c) "relation back" doctrine does not permit members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction.

In analyzing the proposed intervenors' Rule 15(c) argument, we reiterate at the outset that after the District Court consolidated the Detroit PFRS and Wyoming actions, pursuant to the

---

[18] We note at the outset our skepticism that proposed intervenors, who were not parties to the proceedings below, may invoke Rule 15(c)(1) to become parties by amending the complaint of a party (in this case, the only named plaintiff) in the action.  *See Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 209 (4th Cir. 2006) ("We readily reject the [proposed intervenors'] first argument that their claims would, if included in an amended complaint, relate back to the date of filing of the original complaint [because] these would-be plaintiffs, as nonparties, could not have moved to amend the plaintiffs' complaint and get the benefit of any relation back."); *cf.* Fed. R. Civ. P. 15(a)(1), (2) (permitting "[*a*] *party* [to] amend *its* pleading" (emphases supplied)).  Nonetheless, we need not address this issue, or whether Rule 15(c) allows "relation back" of claims otherwise barred by a statute of repose, because the proposed intervenors in this case may not create jurisdiction for their claims by intervening as named plaintiffs.

PSLRA, 15 U.S.C. § 78u–4, *see* note 6, *ante*, and appointed Wyoming to be the lead plaintiff of the consolidated action, no other plaintiffs were named in the consolidated action. The District Court subsequently dismissed for lack of standing all claims in the Amended Complaint arising from any offerings in which the Wyoming entities, as the lead and sole named plaintiffs, had not themselves purchased securities. *IndyMac I*, 718 F. Supp. 2d at 501; *see also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) ("[C]ourts in this circuit have repeatedly held that, in order to maintain a class action, Plaintiffs must first establish that they have a valid claim *with respect to the shares that they purchased.*" (alterations omitted) (emphasis supplied)).[19] Notably, Detroit Retirement, LACERA, and PERS—the three proposed intervenors who are appellants here—were, at all times, members of the asserted class in the consolidated action, but were never named plaintiffs. Thus, as class members, these putative intervenors were represented vicariously but were not litigants themselves.

In these circumstances, the proposed intervenors' ability to join the suit is foreclosed by the "long recognized" rule that "if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim." *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) (internal quotation marks and alterations omitted); *see also Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 95 (2d Cir. 1990) ("[I]t is fundamental that an intervening claim cannot confer subject matter jurisdiction over the action it seeks to join."); 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §

---

[19] After the District Court dismissed the majority of Wyoming's claims for lack of standing, we decided *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) (holding that purchaser of securities in particular offering may, in appropriate circumstances, assert class action claims on behalf of purchasers of other tranches of securities within same offering or of securities in other offerings backed by loans from common originators). Wyoming has since moved for partial reconsideration of the District Court's dismissal ruling; our decision today implicates only those claims and defendants as to which Wyoming would lack standing under *NECA-IBEW*.

1917, at 457 (3d ed. 2005) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action.").[20]

Prior to class certification, the District Court dismissed for lack of constitutional standing all claims in the Amended Complaint arising from offerings that the Wyoming entities, as the only named plaintiffs, had not purchased. In so doing, the District Court ruled that no named plaintiff in the suit had constitutional standing to bring the claims that the proposed intervenors later sought to assert before the District Court and which they now press on appeal.[21] The District Court lacked jurisdiction over certain claims of the original lead plaintiff—the very claims now asserted by the proposed intervenors—and that defect may not be cured by later intervention. *See Disability Advocates*, 675 F.3d at 160. Accordingly, absent circumstances that would render the newly asserted claims independently timely, neither Rule 24 nor the Rule 15(c) "relation back" doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction.[22]

---

[20] Indeed, we have recently explained:

> The logic that underlies this rule is clear enough. Intervention is a procedural means for entering an existing federal action. *See Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005). The Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts." Fed R. Civ. P. 82. That is, Rule 24 does not itself provide a basis for jurisdiction. Accordingly, "since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a 'nonexistent' law suit." *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965).

*Disability Advocates*, 675 F.3d at 160-61; *see also id.* (noting that this rule is "an axiomatic principle of federal jurisdiction," and collecting cases).

[21] "Where the named plaintiff's claim is one over which 'federal jurisdiction never attached,' there can be no class action." *Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) (citing *Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that federal courts have no jurisdiction where the plaintiff has no standing to sue).

[22] We note that our analysis here, dealing with a putative class action prior to certification, is distinct from standing post-certification. As one of our sister circuits has explained:

Our holding here is consistent with the structure and purposes of the PSLRA. That statute provides that a district court should appoint as lead plaintiff "the member or members of the purported plaintiff class that [are] most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). However, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. . . . [I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). Nor do we think it necessary "that a different lead plaintiff be appointed to bring every single available claim," as such a requirement "would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id.* at 82 n.13. Rather, there must be a named plaintiff sufficient to establish jurisdiction over each claim advanced. *See id.* at 82-83.

Our holding today merely reemphasizes that "the [PSLRA] was . . . certainly not intended to excuse sophisticated parties [such as proposed intervenors] from being diligent and keeping abreast of developments in the case, especially when the class is not certified." *Emp'rs-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 925 (9th Cir. 2007). The proposed intervenors, through minimal diligence, could have avoided the operation of the Section 13 statute of repose simply by making timely motions to intervene in the action as named plaintiffs,

---

> After a suit is certified as a class action, a loss of standing by the named plaintiff does not destroy or (if it affects just one of several claims) curtail the federal court's jurisdiction; he can be replaced by a member of the class who has standing. But until certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs.

*Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) (citations omitted).

or by filing their own timely actions and, if prudent, seeking to join their claims under Federal Rule of Civil Procedure 20 (joinder).[23]

## CONCLUSION

To summarize, we hold that:

(1) The tolling rule set forth by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), does not apply to the three-year statute of repose in Section 13 of the Securities Act of 1933, 15 U.S.C.A. § 77m; and

(2) Absent circumstances that would render the newly asserted claims independently timely, neither Rule 24 nor the Rule 15(c) "relation back" doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction.

For these reasons, we **AFFIRM** the June 21, 2011 order of the District Court, insofar as it partially denied the motions to intervene by proposed intervenors.

---

[23] Indeed, Judge Kaplan noted as much in his opinion. *See IndyMac II*, 793 F. Supp. 2d at 641 (noting that no entity objected to naming Wyoming as the sole plaintiff); *cf. id.* at 644 (observing that Detroit PFRS, one of the proposed intervenors, might have saved its claims through timely intervention).