RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0123p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ANDREW M. STEIN, et al. (15-5903); CANALE
FUNERAL DIRECTORS, INC., et al. (15-5905),

          *Plaintiffs-Appellants*,

    *v.*

REGIONS MORGAN KEEGAN SELECT HIGH INCOME
FUND, INC., et al.,

          *Defendants-Appellees*.

Nos. 15-5903/5905

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 2:13-cv-02841; 2:13-cv-02839—Samuel H. Mays, Jr., District Judge.

Argued: April 19, 2016

Decided and Filed: May 19, 2016

Before: COLE, Chief Judge; CLAY and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** H. Naill Falls, Jr., FALLS & VEACH, Nashville, Tennessee, for Appellants. Peter Sean Fruin, MAYNARD, COOPER & GALE, P.C., Birmingham, Alabama, for Appellees. **ON BRIEF:** H. Naill Falls, Jr., FALLS & VEACH, Nashville, Tennessee, for Appellants. Peter Sean Fruin, Kathryn Roe Eldridge, MAYNARD, COOPER & GALE, P.C., Birmingham, Alabama, Kevin C. Logue, Kevin P. Broughel, PAUL HASTINGS LLP, New York, New York, Britt K. Latham, Joseph B. Crace, Jr., BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellees.

1

―――――――――

**OPINION**

―――――――――

CLAY, Circuit Judge.  Plaintiffs, investors seeking recovery for substantial investment losses, appeal the district court's dismissal of their actions filed pursuant to the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, and 77o, the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, as barred by the applicable statutes of limitations.  We agree that these actions were untimely, and **AFFIRM**, but hold that they were barred by the applicable statutes of repose.

**BACKGROUND**

**Factual Background**

The remaining Plaintiffs on appeal, Andrew M. Stein, Stein Holdings, Inc., Stein Investments, LLC, (collectively, the "Stein Plaintiffs"), Warren Canale, and Canale Funeral Directors, Inc., (collectively, the "Canale Plaintiffs"), invested and lost significant amounts money in five investment funds: the Regions Morgan Keegan Select High Income Fund, Inc., the RMK High Income Fund, the RMK Advantage Income Fund, the RMK Strategic Income Fund, and the RMK Multi-Sector High Income Fund, all of which are named as Defendants in this action (the "Funds").  The Select Fund is an open-end fund, while the rest are closed-end funds. After the Funds lost nearly 90% of their value in 2007 and 2008, management of the four closed-end funds was turned over to a different investment advisor in July 2008.  The remaining funds were deemed "unsalvageable" at an indeterminate date.  Some regulatory activity ensued in subsequent years, but Plaintiffs allege no further misconduct by any Defendant after the transfer of the closed-end funds. When Plaintiffs filed this action in 2013, they also named as Defendants the Funds' investment advisor, Regions Investment Management, Inc., and Regions Investment Management's two corporate parents, RFC Financial Holding, LLC and Regions Financial Corporation.

Plaintiffs allege that these catastrophic losses occurred because the Funds were overvalued and heavily concentrated in certain types of risky securities.  According to Plaintiffs,

Defendants unlawfully concealed the Funds' risks, overvaluation, and lack of diversification from investors and the SEC, and Plaintiffs relied on these material misrepresentations of fact in deciding to invest in the Funds. All Plaintiffs have previously sought recourse for their losses—either in arbitration, in court, or both.

**Canale Funeral Arbitration**

Plaintiffs' contracts with Morgan Keegan & Co., Inc.—which underwrote and provided services to the Funds but is not a defendant in this case—contained an arbitration clause covering "all controversies between you and Morgan Keegan (or any of Morgan Keegan's present or former officers, directors, agents or employees) which may arise from any account or for any cause whatsoever." (Stein R. 13–2 at Page ID 500; Canale R. 15–1, Client Agreement at Page ID 581.) In early 2008, Canale Funeral filed a statement of claim before the Financial Industry Regulatory Authority ("FINRA") alleging common law negligence and unsuitability, breach of fiduciary duty and breach of loyalty, breach of contract, common law fraud and misrepresentation, and violations of the Tennessee Blue Sky Laws and the Tennessee Consumer Protection Act. Canale Funeral's factual allegations were largely the same as in this action: the Funds made misrepresentations about the Funds' diversification, valuation, and degree of risk, on which Canale Funeral relied in deciding to invest in the Funds. These claims were denied with prejudice on July 10, 2009.

**Stein Plaintiffs' Arbitration**

On August 29, 2008, the Stein Plaintiffs filed a statement of claim against Morgan Keegan & Co., Inc. before FINRA alleging that the Funds' illiquidity, risk, and valuation had been misrepresented. Unlike Canale Funeral, the Stein Plaintiffs alleged violations of federal securities laws, including various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, and SEC Rule 10b-5, nearly all of which they invoke again in this action. In their statement of claim, the Stein Plaintiffs also asserted violations of the Tennessee Securities Act, National Association of Securities Dealers (NASD) conduct rules, unsuitability, breach of fiduciary duty, negligence, failure to supervise, breach of contract, fraud, vicarious liability, and civil conspiracy. FINRA granted $2,500,000 in damages for unsuitability, negligence, and

failure to supervise but denied all other claims, including the federal law claims, on February 19, 2010.

**Stein Plaintiffs' 2008 Lawsuit**

On August 29, 2008—the same day that they filed their FINRA claim—the Stein Plaintiffs filed a complaint in Tennessee state court, which did not name any Defendant in the present action, making largely the same factual claims and alleging violation of federal securities laws and the Tennessee Securities Act, civil conspiracy, and professional negligence. After the case was removed to the United States District Court for the Western District of Tennessee, but before the defendants had answered or filed a motion to dismiss, the Stein Plaintiffs voluntarily dismissed the case. On December 31, 2008, the district court entered an order and judgment dismissing the case without prejudice.

**The *Rice* Action**

On February 25, 2009, some nineteen investors filed suit in Alabama state court over their losses from the Funds in a case called *Grantland Rice II, et al. v. Regions Financial Corporation, et al.* An amendment to the amended complaint filed on January 5, 2010 added the Stein Plaintiffs and Warren Canale (but not Canale Funeral) as plaintiffs. The second amended *Rice* complaint, which named only Regions Financial Corporation and Regions Investment Management of the current Defendants, described the collapse of the Funds, and alleged the same misrepresentations with respect to risk, liquidity, and diversification.[1] The *Rice* plaintiffs framed their claims solely in terms of state law, claiming common-law misrepresentation and fraudulent concealment, violation of several states' securities laws, negligent supervision, and conspiracy. After the trial court denied a motion to dismiss, the *Rice* defendants sought mandamus relief, which the Alabama Supreme Court granted in *Ex parte Regions Fin. Corp.*, 67 So. 3d 45 (Ala. 2010). The Alabama Supreme Court, applying Maryland law, held that the *Rice* plaintiffs' claims were derivative and directed the trial court to dismiss the suit because the plaintiffs had not complied with Alabama procedural requirements for initiating a derivative

---

[1]The *Rice* plaintiffs sued Regions Investment Management under its former name, Morgan Asset Management.

action. *Id.* at 55–56.  The trial court entered an order dismissing the action with prejudice on January 17, 2011.

**Actions by other plaintiffs**

Plaintiffs in this action were hardly the only RMK investors to seek recourse in the courts.  Two class actions, *In re: Morgan Keegan Open-End Mutual Fund Litig.*, No. 2:07-cv-2784, and *Willis, et al. v. Morgan Keegan & Company, Inc. et al.*, No. 2:07-cv-2830, were filed in the United States District Court for the Western District of Tennessee in December 2007.  After numerous suits were filed in various fora, the Judicial Panel on Multidistrict Litigation transferred the remaining lawsuits to the United States District Court for the Western District of Tennessee in February 2009.  The district court provisionally certified a class for settlement purposes in *In re: Morgan Keegan* on November 30, 2015.  The district court approved the settlement in *Willis* and certified the class action on August 5, 2013.

**Procedural History**

On October 25, 2013, the Stein Plaintiffs and the Canale Plaintiffs each filed nearly identical six-count complaints in the United States District Court for the Western District of Tennessee alleging violation of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o; Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, as well as common-law vicarious liability for violations of all these statutes and regulations.  The Stein Plaintiffs amended their complaint once and the Canale Plaintiffs amended their complaint twice.  In September 2014, after Defendants moved to dismiss both actions on a variety of grounds, the district court granted in part and denied in part Defendants' motions to dismiss in nearly identical orders, in which it held that Plaintiffs' claims were not untimely under the applicable statutes of limitations and repose, and were not barred by res judicata.  The district court also declined to dismiss them as derivative.  Defendants moved for reconsideration in both cases, arguing that the district court had improperly held that *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005), was no longer binding precedent, and *Wyser-Pratte* obligated the district court to find that Plaintiffs' claims were barred by the relevant statutes of limitations.  Applying *Wyser-*

*Pratte*, the district court granted the motions for reconsideration in both cases and dismissed Plaintiffs' claims in full on July 31, 2015 on the grounds that Plaintiffs' claims were barred by the statute of limitations. After Plaintiffs appealed, the two cases were consolidated for briefing and argument.

## DISCUSSION

### Standard of Review

This Court reviews de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). In reviewing the grant of a motion to dismiss, this Court "construe[s] the complaint in the light most favorable to the plaintiff and accept[s] all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts in the complaint that "'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)).

The district court's determination that a complaint was barred by the statute of limitations is a conclusion of law that this Court reviews de novo. *Kelly v. Burks*, 415 F.3d 558, 560 (6th Cir. 2005). While a complaint need not plead the absence of an affirmative defense such as the statute of limitations, when "the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo*, 676 F.3d at 547 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). This Court may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied. *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

## A.     Overview of statutes of limitation and statutes of repose

Defendants provide two alternative arguments that Plaintiffs' claims are untimely: both the applicable statutes of limitations and statutes of repose bar Plaintiffs' claims in their entirety. The Supreme Court recently clarified the distinctions between these related concepts, each of which may make a plaintiff's action untimely, in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). *CTS* concerned whether 42 U.S.C. § 9658, which preempts state statutes of limitations for certain environmental tort actions, also preempted a North Carolina statute of repose for a particular tort. In deciding that the state statute of repose was not preempted, the Supreme Court stressed the differences between statutes of limitation and of repose, despite their "considerable common ground." *Id.* at 2182. "In the ordinary course," the Supreme Court explained, "a statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *Id.* (quoting Black's Law Dictionary 1546 (9th ed. 2009)). However, a statute of repose "puts an outer limit on the right to bring a civil action," which is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* The two doctrines reflect slightly different purposes:

> Statutes of limitations require plaintiffs to pursue diligent prosecution of known claims. Statutes of limitations promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. Statutes of repose also encourage plaintiffs to bring actions in a timely manner, and for many of the same reasons. But the rationale has a different emphasis. Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time. Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability. Indeed, the Double Jeopardy Clause has been described as a statute of repose because it in part embodies the idea that at some point a defendant should be able to put past events behind him.

*Id.* at 2183 (internal alterations and citations omitted). Another "central distinction" between statutes of limitation and statutes of repose relates to the doctrine of equitable tolling:

> Statutes of limitations, but not statutes of repose, are subject to equitable tolling, a doctrine that pauses the running of, or "tolls," a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action. Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond

a plaintiff's control. . . . [A] statute of repose is a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.

*Id.* (internal quotations and citations omitted).

The statutes pursuant to which Plaintiffs seek to bring their claims impose time limits on bringing an action. Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m, states as follows:

No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . . In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.

The Supreme Court has described this framework as a "1–year period after discovery combined with a 3–year period of repose." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360 (1991). The Second Circuit has clarified that the one-year period is a statute of limitations, a characterization we adopt. *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107 (2d Cir. 2013).

The Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, likewise imposes separate time limits for filing an action based on discovery of the violation and when the violation itself occurred:

[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—

(1) 2 years after the discovery of the facts constituting the violation; or
(2) 5 years after such violation.[2]

28 U.S.C. § 1658(b); *see also Wike v. Vertrue, Inc.*, 566 F.3d 590, 595–96 (6th Cir. 2009) (applying § 1658(b) to Securities Exchange Act claims, which the opinion contrasted to the time

---

[2]The two- and five-year limits were enacted as part of the Sarbanes-Oxley Act in 2002. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 647 (2010). Thus *Lampf*, which concerned Securities Exchange Act claims but predated the Sarbanes-Oxley Act, discussed the one- and three-year periods contained in the Securities Act, 15 U.S.C. § 77m. *See* 501 U.S. 350.

limits for Securities Act claims).  The Supreme Court has held the two-year period to be a statute of limitations, and described the five-year period as an "unqualified bar on actions instituted '5 years after such violation,' § 1658(b)(2), giving defendants total repose after five years." *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010).  We read this language as interpreting § 1658(b)(2) as a statute of repose.  If primary liability is time-barred, courts dismiss claims based on the liability of a party who controlled the primarily liable defendant.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (dismissing claim under 15 U.S.C. § 78t(a)); *IndyMac*, 721 F.3d at 113 (dismissing claim under 15 U.S.C. § 77o).[3]

## B.     Tolling principles in class actions

Plaintiffs seek to apply the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), to argue that the relevant statutes of limitation and of repose were tolled. In that case, eleven days short of a year after the defendant corporations signed a consent decree with the federal government in an antitrust case, the state of Utah filed an antitrust action of its own against the defendants, which it purported to maintain as a class action under Rule 23.  *Id.* at 540–41.  Class certification was denied slightly less than seven months after filing; eight days after the entry of the order denying class certification, over sixty towns, municipalities, and water districts in Utah sought to intervene.  *Id.* at 543–44.  Although more than one year had elapsed since the signing of the consent decree, the Supreme Court held that the motion to intervene was timely because "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status," and the intervenors had brought their motion with three days to spare.  *Id.* at 553.

The Supreme Court extended *American Pipe* tolling to class members who opt out in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n.13 (1974), and to plaintiffs who file separate actions after the denial of class certification in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345

---

[3]Common law vicarious liability principles, asserted in Count VI, offer an avenue to recovery distinct from the control liability provisions of the federal securities statutes asserted in Counts III and V.  *Holloway v. Howerdd*, 536 F.2d 690, 694 (6th Cir. 1976).  When plaintiffs assert vicarious liability theories for violations of federal statutes, courts look to the statute giving rise to the cause of action to determine whether they are timely.  *See, e.g.*, *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994).

(1983). In *Crown, Cork & Seal*, two former employees of the defendant corporation had brought a putative class action alleging employment discrimination two months before the plaintiff received a right-to-sue letter from the EEOC. *Id.* at 347. Nearly two years after the plaintiff received the letter from the EEOC, the district court finally denied class certification, and the plaintiff filed a lawsuit of his own less than ninety days later. *Id.* at 348. The Supreme Court held that his complaint was timely because

> the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.

*Id.* at 353–54 (internal quotations and citations omitted).

Thus, *American Pipe* and *Crown, Cork & Seal* govern situations where a plaintiff files an action after the district court resolves the issue of class certification. However, this Court declined to extend *American Pipe* tolling to plaintiffs who file individual actions *before* the district court rules on class certification in *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005). *Wyser-Pratte* concerned whether Ohio state-law fraud claims had been brought in a timely manner after other plaintiffs had sought to recover under federal securities laws. *Wyser-Pratte* held, as an alternative basis for its dismissal of the plaintiff's action, that "a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine." *Id.* at 568. *Wyser-Pratte* invoked judicial economy as the basis for its rule, stating that "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided." *Id.* at 569. It further explained:

> The parties and courts will not be burdened by separate lawsuits which, in any event, may evaporate once a class has been certified. At the point in [] litigation when a decision on class certification is made, investors usually are in a far better position to evaluate whether they wish to proceed with their own lawsuit, or to join a class, if one has been certified.

*Id.* (quoting *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 452 (S.D.N.Y. 2003)).

Plaintiffs argue vehemently that *Wyser-Pratte* is not binding on this Court because it constitutes an improper limitation of Supreme Court doctrine, represents the minority rule, and was wrongly decided. We recognize that *Wyser-Pratte* now represents the minority rule. *Compare Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) (approving in dicta of forfeiture rule), *with State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1230 (10th Cir. 2008); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254–56 (2d Cir. 2007) (holding that *American Pipe* tolling applies to plaintiffs who file actions while class certification is pending). That several of our fellow Circuits chose not to follow our reasoning does not make *Wyser-Pratte* any less binding, however; "a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)).[4] However fervently Plaintiffs might wish, and even though we may have doubts about its holding, we cannot today overrule *Wyser-Pratte*. Indeed, subsequent cases have recognized that it remains controlling law. *See Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 653 (6th Cir. 2015); *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 480 (6th Cir. 2013).

## C.     Application of *Wyser-Pratte* to Plaintiffs' Actions

The Stein and Canale Plaintiffs each filed their initial federal court complaints on October 25, 2013. Because each Plaintiff sought recourse in arbitration or in court by early 2010 at the latest, Plaintiffs had clearly discovered the facts constituting the violation several years prior to bringing this action, potentially barring claims under 15 U.S.C. §§ 77k, 77l(a)(2), and 77o (one-year statute of limitations) or 15 U.S.C. §§ 78j(b) and 78t(a) (two-year statute of limitations). Plaintiffs' claims can, however, be saved, if the applicable statute of limitations was tolled, as Plaintiffs argue it was, pursuant to *American Pipe*. *See* 414 U.S. 538.

---

[4]Before it granted reconsideration, the district court noted that the decision of the Southern District of New York in *WorldCom*, which *Wyser-Pratte* followed, was reversed on appeal, and chose to apply the rule of the Second Circuit that Plaintiffs were entitled to the benefit of *American Pipe* tolling, "independent actions" notwithstanding. Although the district court seemingly realized its mistake by granting reconsideration, we take this opportunity to remind the district court that this was error.

Before proceeding to Plaintiffs' arguments about why *Wyser-Pratte* is inapplicable, we must first examine the class actions on which they rely. Plaintiffs argue that the statute of limitations was tolled under *American Pipe* by the *In re: Morgan Keegan* and *Willis* class actions, which were filed in the United States District Court for the Western District of Tennessee on December 6, 2007 and December 21, 2007, respectively. Defendants Regions Financial Corporation, RFC Holding and Regions Investment Management were named in both actions (albeit, in the case of the latter two, under their former names); the closed-end funds were named in *Willis*; and the Select Fund was named in *In re Morgan Keegan*. Both actions asserted violations of Sections 11, 12(a)(2), and 15 of the Securities Act, Sections 10(b) and 20 of the Securities Exchange Act, and SEC Rule 10b-5, as the complaints in this consolidated case do. The district court provisionally certified a class for settlement purposes in *In re: Morgan Keegan* on November 30, 2015. The district court approved the settlement in *Willis* and certified the class action on August 5, 2013, some two and a half months before Plaintiffs filed their complaints. Because the order in *Willis* exempted parties who had filed FINRA arbitrations that were not dismissed to participate in the class actions or state court actions filed during the pendency of litigation that were dismissed with prejudice, Plaintiffs appear not to be class members. Thus, the *Rice* action, the FINRA arbitrations, and the Stein state court action were filed during the pendency of the class proceedings in *Willis*; all of these and this instant action were filed during the pendency of the *In re Morgan Keegan* class proceedings.

Plaintiffs also offer three reasons why they have not forfeited their claims under *Wyser-Pratte*: the Alabama state court action in *Rice* was significantly different from the 2007 class action complaints because the *Rice* plaintiffs asserted only state-law claims; not all of the current Defendants were named as defendants in *Rice*; and Canale Funeral's FINRA arbitration against Morgan Keegan & Co.—a non-party to this case—did not force Canale Funeral to forfeit its claims against Defendants. *Wyser-Pratte* itself dispenses with the first of these contentions. In *Wyser-Pratte*, the plaintiff filed its lawsuit after unrelated plaintiffs filed separate lawsuits against the two corporate defendants; "[a]ll three actions . . . alleged the same scheme to falsely inflate Telxon's financial results." 413 F.3d at 558. Although the previous plaintiffs asserted federal securities fraud claims against one defendant while the later plaintiff relied only on Ohio state law to support its fraud allegation, we held that the later plaintiff had forfeited its Ohio

fraud claim. *Id.* at 569. The 2007 class action complaints in *Willis* and *In re Morgan Keegan* complaint alleged the same misrepresentations with respect to risk, liquidity, and diversification as the second amended *Rice* complaint did (and the instant complaints continue to do), and framed their claims in terms of federal securities law; that the *Rice* plaintiffs proceeded purely on state law securities fraud theories does not allow the Stein Plaintiffs and Warren Canale, who were plaintiffs in *Rice*, to evade *Wyser-Pratte*.

The district court evidently considered the *Rice* action, to which the Funds were not parties, sufficient to dismiss all of the Stein Plaintiffs' and Warren Canale's claims as to all Defendants. Yet *Wyser-Pratte* did not address what to do when a plaintiff files an independent action after a class action has been filed where the subsequent lawsuit names some, but not all, of the defendants in the class action, as *Rice* did. Reasoning that a "class action must afford the defendant with adequate notice," *Wyser-Pratte* held that "class action tolling does not apply to a defendant not named in the class action complaint." 413 F.3d at 567. By the same token, its forfeiture rule might well not apply to any defendant not named in the subsequent action, and we decline to extend the forfeiture rule to defendants not subsequently named.

Plaintiffs' final argument—that Canale Funeral's FINRA arbitration against non-party Morgan Keegan & Co. should not trigger *Wyser-Pratte*'s forfeiture rule against Defendants— reveals still more subtleties that the district court glossed over. In granting reconsideration, the district court held that the Canale Funeral arbitration was an "independent action" sufficient to trigger *Wyser-Pratte*:

> Under *Vertrue* and *Wyser-Pratte*, a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine. . . . Canale and Canale Funeral chose to pursue independent actions: Canale joined the *Rice* Case on January 5, 2010, and Canale Funeral filed a Statement of Claim with FINRA against Morgan Keegan on January 22, 2008. Canale and Canale Funeral chose not to wait for a decision on the class certification issues in *Willis* and the Open-End Fund Litigation. Once Canale joined the *Rice* action and Canale Funeral filed its Statement of Claim, they forfeited their opportunity to invoke the *American Pipe* tolling doctrine.

(Canale R. 36, Order Granting Reconsideration at Page ID 880.) *Wyser-Pratte* indeed applied its forfeiture doctrine to those plaintiffs who file "independent actions" prior to resolution of class

certification in the initial class action. *See* 413 F.3d at 568–69. It did not, however, have occasion to delineate fully what types of independent actions would trigger its forfeiture rule, or under what circumstances; all three "actions" were federal court lawsuits before the same district judge, and the only remaining defendant on appeal had been named in one of the prior lawsuits. *Id.* at 558.

Canale Funeral proceeded in arbitration against Morgan Keegan & Co., which, although not a party to this case, was named as a defendant in *Willis* and *In re Morgan Keegan*. In essence, the district court ruled that Canale Funeral's arbitration against Morgan Keegan & Co., whose statement of claim described the same course of conduct as in the 2007 class action complaints, was sufficient to forfeit claims against parties not present at the arbitration (or bound by the arbitration clause), and dismissed its claims as to all Defendants in this action. If *Wyser-Pratte* does not necessarily cause plaintiffs to forfeit claims against parties not named in a subsequent action, it certainly does not compel this result, which would deprive Canale Funeral the opportunity to proceed against any other entity—and of any day in court whatsoever.

Because Plaintiffs filed this action during the pendency of the class certification proceedings in *In re Morgan Keegan*, they have forfeited *American Pipe* tolling with respect to the defendants named in that case: RFC Financial Holding, Regions Financial Corporation, Regions Investment Management, and the Select Fund. Their claims are untimely as to these parties, proving fatal to Counts III and V, which assert violation of the very federal securities laws asserted in the prior class actions and name no other Defendants. Count II likewise cannot be sustained, because it is asserted against only the Select Fund, several non-parties to the litigation dismissed by the district court, and the RMK Multi-Sector High Income Fund, which was dismissed from this count, a ruling Plaintiffs do not contest on appeal. With respect to the closed-end funds, Plaintiffs waited for resolution of the class issue in *Willis* and only thereafter filed suit. We need not remand for determination of whether any portion of the remaining counts may survive, however, because the applicable statutes of repose are dispositive as to all claims.

**D.      Statutes of Repose**

Defendants argue that Plaintiffs' claims are barred by the relevant statutes of repose, and that *American Pipe* tolling applies only to statutes of limitations.  Plaintiffs counter that the *Willis* and *In re Morgan Keegan* litigation tolled the statute of repose pursuant to *American Pipe*, making their claims timely.

The statute of repose applicable to Plaintiffs' claims arising under Sections 11 and 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77k and 77l(a)(2)—which establish civil liability for false or misleading registration statements and investment prospectuses or communications, respectively—can be found in 15 U.S.C. § 77m, which requires that

> [i]n no event shall any . . . action be brought to enforce a liability created under section 77k . . . of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale.

Although Plaintiffs' complaints identify the dates that numerous allegedly false registration statements were made in violation of Section 11 of the Securities Act, 15 U.S.C. § 77k, they fail to specify in all cases when the securities were actually offered to the public, which triggered the three-year statute of repose for § 77k violations, or when those securities were actually sold, which triggered the statute of repose for § 77l(a)(2).  Plaintiffs also do not make clear when the violations of Section 10(b) and 20(a) of Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), occurred, or when they believe the five-year repose period to have started running.  *See* 28 U.S.C. § 1658(b)(2).  In any event, Defendants cannot have offered securities to the public, sold them, or engaged in any of the other misconduct alleged in the complaints after July 2008, when management of the four closed-end funds was turned over to a different investment advisor, and after which the allegations of misconduct by Defendants cease.

Because Plaintiffs filed their respective complaints on October 25, 2013—more than five years later—all of their claims are barred by the relevant three- or five-year statutes of repose, absent tolling of some kind.  Plaintiffs argue that *American Pipe* applies to statutes of repose and served to toll the repose period while class certification was pending in *Willis* and *In re Morgan Keegan*.  Notwithstanding the issues that Plaintiffs' tolling claims might encounter under *Wyser-*

*Pratte*, Plaintiffs must first convince this Court to extend *American Pipe* tolling to statutes of repose, an issue our Circuit has not yet had opportunity to resolve.

Our fellow Circuits are split. The Tenth Circuit held that *American Pipe* tolled statutes of repose pending class certification in *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000), while the Second Circuit came to the opposite conclusion in *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013). *Joseph* held that *American Pipe* was a form of "legal tolling" distinct from equitable tolling and applicable to statutes of repose.[5] 223 F.3d at 1166–67. *Joseph* described its reasoning as follows:

> Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished. Here, the claim was brought within this period on behalf of a class of which Mr. Joseph was a member. Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve "tolling" at all. Rather, Mr. Joseph has effectively been a party to an action against these defendants since a class action covering him was requested but never denied. Defendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved. Consequently, we conclude that *American Pipe* tolling applies to the statute of repose governing Mr. Joseph's action.

*Id.* at 1168 (internal citations omitted).

*IndyMac* held that, regardless of whether *American Pipe* tolling were equitable or derived from a statutory source, it could not apply to statutes of repose. 721 F.3d 95. It noted that that the Supreme Court had previously held that the "three-year limitation" of Section 13 of the Securities Act "is a period of repose *inconsistent* with tolling," whose "purpose" was "'clearly to serve as a cutoff,' to which 'tolling principles' do not apply." *Id.* at 107 (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)). *IndyMac* therefore held that *Lampf* had foreclosed equitable tolling of Section 13's three-year repose period. *Id.* at 109. If, however, *American Pipe* were instead a form of legal or class-action tolling derived from

---

[5]*Joseph* did not define the term "legal tolling," but the Supreme Court recently explained that "some federal courts have used that term to describe our holding [in *American Pipe*] on the ground that the rule 'is derived from a statutory source,' whereas equitable tolling is 'judicially created.'" *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 n.6 (2012) (quoting *Arivella v. Lucent Technologies, Inc.*, 623 F. Supp. 2d 164, 176 (D. Mass. 2009)). Earlier this year, the Supreme Court referred to *American Pipe* tolling in passing as "class-action tolling," a theory the petitioner presented separately from its arguments regarding equitable tolling. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016).

Rule 23, its application to statutes of repose would likewise violate the Rules Enabling Act. *Id.* The Rules Enabling Act, 28 U.S.C. § 2072, which allows the Supreme Court to promulgate "rules of practice and procedure," including the Federal Rules of Civil Procedure, but mandates that "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Id.* (citing 28 U.S.C. § 2072(b)). Thus, allowing *American Pipe* to toll statutes of repose would impermissibly affect the rights of defendants to be free of liability after three years. *Id.*

Of these two cases, *IndyMac* has the more cogent and persuasive rule. Its holding is also more consistent with the Supreme Court's subsequent decision in *CTS Corp. v. Waldburger. See* 134 S. Ct. 2175. Like *Lampf* before it, *CTS* discussed at length the incompatibility of equitable tolling and statutes of repose: "a statute of repose is a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist *and will not be tolled for any reason.*" 134 S. Ct. at 2183 (emphasis added). As *IndyMac* noted, *Lampf* explained that the "purpose of the 3–year limitation" in Section 13 of the Securities Act "is clearly to serve as a cutoff." 501 U.S. at 363. The statutes of repose at issue in this case are indeed unequivocal in extinguishing liability. Section 13 of the Securities Act states that "*[i]n no event shall any such action be brought* to enforce a liability created under section 77k . . . more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale." 15 U.S.C. § 77m (emphasis added). The statute of repose applicable to Plaintiffs' claims under the Securities Exchange Act likewise states, in no uncertain terms, that an action "may be brought not later than . . . 5 years after such violation." 28 U.S.C. § 1658(b)(2). The Supreme Court held that § 1658(b)(2) was an "unqualified bar on actions" after the five-year period, "giving defendants total repose" after that time. *Merck*, 559 U.S. at 650.

The Supreme Court's discussion of the purposes of statutes of repose in *CTS* and *Lampf* is no less pertinent even assuming *American Pipe* tolling is a form of class-action tolling deriving its authority from Rule 23. *IndyMac* rightly identified a potential issue under the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). In order not to overstep this limitation, "the Rule must 'really regulat[e]

procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)). If a Rule "governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* (quoting *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 446 (1946)) (alteration in original). After reviewing cases in which Rules Enabling Act challenges had been denied, the Supreme Court held that the Rules in question governed procedure because they "undeniably regulated only the process for enforcing those rights; none altered the rights themselves, the available remedies, or the rules of decision by which the court adjudicated either." *Id.* at 407–08.

Statutes of repose arguably affect rights, remedies, and rules of decision: they confer on defendants a right to be free of liability by imposing an absolute temporal bar on claims, prevent recovery by plaintiffs after the repose period, and impose the additional decision rule that courts must rule in defendants' favor if plaintiffs delay beyond the statutory period to bring suit. That statutes of repose vest a substantive right in defendants to be free of liability is underscored by the Supreme Court's analogies in *CTS* between statutes of repose and the ability to discharge debts in bankruptcy or to be free of double jeopardy in criminal proceedings. *See* 134 S. Ct. at 2183. Because statutes of repose give priority to defendants' right to be free of liability after a certain absolute period of time (rather than plaintiffs' ability to bring claims), we cannot endorse the Tenth Circuit's view—expressed prior to *CTS*—that "[d]efendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved." *Joseph*, 223 F.3d at 1168. We therefore join the Second Circuit in holding that, regardless of whether *American Pipe* tolling is derived from courts' equity powers or from Rule 23, it does not apply to statutes of repose.[6]

---

[6]We recognize that if a lawsuit asserts causes of action subject both to a statute of limitations and a statute of repose, a putative class member in our Circuit is placed in a bind: beyond the repose period, no putative class member may file an action, even if the district court has yet to rule on class certification. This is consistent with the Supreme Court's pronouncement that a statute of repose "mandates that there shall be no cause of action beyond a certain point." *CTS*, 134 S. Ct. at 2187. However, *Wyser-Pratte* imposes an additional hurdle: if a putative class member files a separate action between the lapse of the limitations period and of the repose period, that action is

Plaintiffs filed the instant actions on October 25, 2013, asserting claims with repose periods of three and five years. If the repose periods began to run before October 25, 2010 for the Securities Act claims and October 25, 2008 for the Securities Exchange Act claims, Plaintiffs' claims are barred are in their entirety. Unquestionably, they did—the non-fund Defendants turned over management of the closed-end funds at some point in July 2008, and the complaints allege no misconduct whatsoever by any Defendant after that date. Plaintiffs' claims are thus time-barred by the statutes of repose. We decline to address Defendants' alternative arguments regarding res judicata and collateral estoppel.

**CONCLUSION**

For the reasons stated above, we **AFFIRM** the district court's dismissal of Plaintiffs' claims in full on the grounds that they are barred by the applicable statutes of repose.

---

barred because of *Wyser-Pratte*'s forfeiture rule. Thus, a concerned potential plaintiff must file within the limitations period or be out of luck.

In declining to adopt a forfeiture rule, the Second Circuit read *American Pipe* and *Crown, Cork & Seal* as principally concerned with protecting the interests of class members, particularly "from being *forced* to file individual suits in order to preserve their claims," rather than avoiding duplicative litigation. *WorldCom*, 496 F.3d at 256. Thus, by adopting a forfeiture rule grounded in judicial economy, *Wyser-Pratte* may have misapprehended the primary motivating concerns of *American Pipe*.