[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  15-14463

_____

D.C. Docket No. 2:14-cv-00184-JES-CM

RUSSELL DUSEK,
MARSHA PESHKIN, et al.,

Plaintiffs-Appellants,

versus

JPMORGAN CHASE & CO.,
JPMORGAN CHASE BANK N.A., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 10, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, Circuit Judge, and TITUS,[*] District Judge.

TITUS, District Judge:

For twenty years, Bernard Madoff ran the largest known Ponzi scheme in history through his investment advisory business, Bernard L. Madoff Investment Securities LLC ("BLMIS") and its predecessors and affiliates. *Dusek v. JPMorgan Chase & Co.*, 132 F. Supp. 3d 1330, 1336 (M.D. Fla. 2015). The house of cards collapsed on December 11, 2008, when Madoff was arrested, and the Securities and Exchange Commission ("SEC") filed a civil complaint against him and BLMIS.[1] *Id.* at 1344–45. The U.S. District Court for the Southern District of New York appointed a trustee for the liquation of BLMIS. *Id.* at 1345. The trustee calculated customer claims using the "Net Investment Method," which credited the amount of cash deposited into a customer's BLMIS account, less any amount withdrawn from it. *Id.* Customers who had deposited more than they had withdrawn, excluding appreciation, had a positive net investment and were deemed "net losers." The trustee limited claims to these customers. *Id.*

In the wake of the SEC and bankruptcy proceedings, several class actions were filed against JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P.

---

[*] Honorable Roger W. Titus, Senior United States District Judge for the District of Maryland, sitting by designation.

[1] The district court's Opinion and Order provides a thorough history of the scheme, how it was perpetrated, and the relationship between Madoff and Appellees. *See Dusek v. JPMorgan Chase & Co.*, 132 F. Supp. 3d 1330, 1336–46 (2015).

Morgan Securities LLC, and J.P. Morgan Securities, Ltd. (collectively "JPMorgan") in the Southern District of New York by customers who directly had capital invested with BLMIS as of December 2008.  BLMIS maintained a series of accounts at JPMorgan that received the majority of funds that Madoff's victims "invested."  *Id.* at 1346.  The cases were consolidated on December 5, 2011 as *Shapiro v. JPMorgan Chase & Co.*, Case No. 1:11-cv-8331-CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).  The Consolidated Amended Class Complaint alleged nine common law claims against JPMorgan.  *Id.* at *1.  No federal claims were asserted.  *Id.*

JPMorgan entered a global resolution on January 6, 2014, involving three settlements.  *See Dusek*, 132 F. Supp. 3d at 1346.  First, it entered into a Deferred Prosecution Agreement with the U.S. Attorney for the Southern District of New York.  *Id.*  Second, it paid the trustee $325 million in settlement of the bankruptcy claims.  *Id.*  Finally, JPMorgan paid $218 million in settlement of the *Shapiro* class action, for which the court certified a class whose definition was intended to include only "net losers," thus excluding investors who withdrew more than they had invested ("net winners") before the scheme collapsed.  *Id.*; *see Shapiro*, 2014 WL 1224666, at *13.

3

The legal fallout then moved to the south[2] when, on March 28, 2014, this putative class action was filed in the U.S. District Court for the Middle District of Florida. *Dusek*, 132 F. Supp. 3d at 1334. Appellants' Second Amended Complaint sought to hold liable JPMorgan and two JPMorgan employees: John Hogan, who served as Chief Risk Officer and later Chairman of Risk for JPMorgan, and Richard Cassa, who served as Client Relationship Manager for one of Madoff's accounts. *Id.* at 1335. Appellants argued that JPMorgan and the two employees were liable as control persons under federal securities laws given their banking relationship with Madoff and BLMIS and their access to BLMIS's bank accounts. *Id.* at 1347. Appellants also asserted a federal RICO claim for JPMorgan's investments in BLMIS feeder funds and failure to report suspicious banking activities to the SEC. *Id.* at 1353. Appellants sought to recover the value of the securities listed on account statements issued by BLMIS on November 30, 2008—totaling nearly $64.8 billion in net investments and related fictitious gains. *Id.* at 1338.

On September 17, 2015, the district court granted Appellee/Defendants' Motion to Dismiss the Second Amended Complaint. *Id.* at 1354. It dismissed Count One, alleging violations of Section 20(a) of the Securities Exchange Act of

---

[2] It also moved across the Hudson River to New Jersey, where an action parallel to this case was filed by the same attorneys filing the Florida action now before this Court. *See Friedman v. JPMorgan Chase & Co.*, No. 2:14-CV-1988, 2015 WL 1003887, at *5 (D.N.J. Mar. 2, 2015) (transferring that action from the District of New Jersey to the Southern District of New York).

1934, and Count Nine, the federal RICO claim, with prejudice, and declined supplementary jurisdiction for the remaining counts brought under state law, dismissing them without prejudice.[3] *Id.*

Because this Court finds that Appellants' Section 20(a) claim was untimely and their federal RICO claim was barred by the Private Securities Litigation Reform Act, we affirm the judgment of the district court.

## I.

Review of a district court's decision to grant a motion to dismiss is conducted *de novo*. *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). The motion is granted only when the movant

---

[3] On May 19, 2016, eight months after the decision below in this case, the U.S. District Court for the Southern District of New York dismissed a parallel class action brought on behalf of Madoff net winners with claims similar to those in this case. *See Friedman v. JPMorgan Chase & Co.*, No. 15-cv-5899, 2016 WL 2903273, at *1 (S.D.N.Y. May 18, 2016). There, the court dismissed the claims as time-barred under the Exchange Act's five-year statute of repose and further held that the net winner plaintiffs were never members of the *Shapiro* class (which included only net losers) and their claims were not substantially similar to the claims in the *Shapiro* class action. *Id.* at *8–9. Finally, like the district court here, the court held that the plaintiffs failed to plead that JPMorgan controlled Madoff, *id.* at *10–13, and also dismissed the federal RICO claim. *Id.* at *13–14.

demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102 (1957); *see also Flint v. ABB, Inc.*, 337 F.3d 1326, 1328–29 (11th Cir. 2003).

## II.

### A. Tolling

A private action under Section 20(a) of the Exchange Act[4] must be filed within the earlier of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b) (2014). 28 U.S.C. § 1658(b) is construed by courts as having a two-year statute of limitations and a five-year period of repose. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberston*, 501 U.S. 350, 363, 111 S. Ct. 2773, 2782 (1991) (construing the previous version of the statute that had a one- and three-year structure). *See also Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 398 (2d Cir. 2016), *as amended* (Apr. 29, 2016); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930–32 (7th Cir. 2011).

---

[4] Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Appellants allege that the primary violation underlying the § 20(a) claim was Madoff and BLMIS's violation of § 10(b) of the Exchange Act and Rule 10b-5.

The Supreme Court in *CTS Corp. v. Waldburger* discussed at length the difference between statutes of limitation and statutes of repose, both of which "seek to attain different purposes and objectives." 573 U.S. ___, ___, 134 S. Ct. 2175, 2182 (2014). While a statute of limitations is intended to "require plaintiffs to pursue 'diligent prosecution of known claims'" by limiting the time to bring suit based on the date when the cause of action accrued, *id.* (quoting *Black's Law Dictionary* 1546 (9th ed. 2009)), a statute of repose "puts an outer limit on the right to bring a civil action" based on the "date of the last culpable act or omission of the defendant," whether or not an injury even occurred or was discovered, *id.* "The repose provision is therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability." *Id.* at 2183 (internal citation and quotation marks omitted).

The Court went on to state that statutes of repose are distinct from statutes of limitation in that they are not subject to equitable tolling, "even in cases of extraordinary circumstances beyond a plaintiff's control." *Id.* (citing *Lampf*, 501 U.S. at 363, 111 S. Ct. at 2782 ("[A] period of repose [is] inconsistent with tolling"); 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1056 (3d ed. 2002) ("[A] critical distinction is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling")). *See also Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1279 n.5 (11th Cir. 2005).

Appellants contend that under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756 (1974), the statute of repose was nevertheless tolled by the pendency of the *Shapiro* class action.  They argue that *American Pipe* involved "legal"—not equitable—tolling, and tolling is therefore not foreclosed by *CTS*. Appellants rely on the Tenth Circuit's decision in *Joseph v. Wiles*, 223 F. 3d 1155 (10th Cir. 2000), to support their contention that their claims are timely because of the pendency of the *Shapiro* class action.

In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  *American Pipe*, 414 U.S. at 554, 94 S. Ct. at 766.  In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–54, 103 S. Ct. 2392, 2397–98 (1983), the Supreme Court extended *American Pipe* tolling to would-be class members who filed separate actions after the denial of class certification.

Courts have disagreed over the basis for the Supreme Court's decision in *American Pipe*—whether it relied mainly on (a) Fed. R. Civ. P. 23 in allowing tolling because otherwise it would "frustrate the principal function of a class suit" and create a "multiplicity of activity which Rule 23 was designed to avoid," *American Pipe*, 414 U.S. at 551, 94 S. Ct. at 765, or (b) the equitable power of

8

courts to toll statutes of limitations, *id.* at 557–59, 94 S. Ct. at 768–69.[5]  In *Joseph*, the Tenth Circuit held that *American Pipe* tolling applied to the statute of repose in Section 13 of the Securities Act because it was a rule of legal tolling derived from Rule 23.  223 F.3d at 1166–68.

Appellees argue that the decision in *Police and Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013), is the more persuasive.  There, the Second Circuit found that it did not matter whether the *American Pipe* tolling rule was legal or equitable in nature: either way, there can be no tolling for statutes of repose.  *Id.* at 109.  The court reasoned that the Rules Enabling Act, 28 U.S.C. § 2072(b), which bars courts from enlarging or modifying substantive rights, precludes a court from relying upon Rule 23 as a basis for permitting a plaintiff to file an otherwise untimely complaint (or intervene in a pending timely filed action) after the period of repose has run.  *Id.*  The Second Circuit has recently reaffirmed its conclusion in a case in which, like this one, plaintiffs sought to invoke *American Pipe* tolling for an untimely action brought under Section 20(a).  *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, ___ F.3d ___,  No. 14-507-CV, 2016 WL 3769735, at *2 (2d Cir. July 14, 2016).  The court rejected this contention, holding that "For the reasons we

---

[5] Courts have also noted that, in the past and including during the time of *American Pipe*, courts used the term "statute of limitations" to refer to statutes of repose, thus adding to the confusion on this issue.  *See, e.g.*, *Police and Fire Retirements System of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 n.13 (2d Cir. 2013).

provided in *IndyMac*, . . . *American Pipe* tolling does not apply to § 1658(b)(2)'s five-year state of repose." *Id.* at 2.

Like the Second Circuit, the Sixth Circuit has also applied the Supreme Court's reasoning in *CTS* and followed the Second Circuit's decision in *IndyMac*, declining to toll a statute of repose for, *inter alia*, a Section 20(a) claim. *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 783 (6th Cir. 2016). In *Stein*, the Sixth Circuit provided a well-reasoned discussion of why the Rules Enabling Act would prohibit tolling of a statute of repose:

> Statutes of repose arguably affect rights, remedies, and rules of decision: they confer on defendants a right to be free of liability by imposing an absolute temporal bar on claims, prevent recovery by plaintiffs after the repose period, and impose the additional decision rule that courts must rule in defendants' favor if plaintiffs delay beyond the statutory period to bring suit. That statutes of repose vest a substantive right in defendants to be free of liability is underscored by the Supreme Court's analogies in *CTS* between statutes of repose and the ability to discharge debts in bankruptcy or to be free of double jeopardy in criminal proceedings. Because statutes of repose give priority to defendants' right to be free of liability after a certain absolute period of time (rather than plaintiffs' ability to bring claims), we cannot endorse the Tenth Circuit's view—expressed prior to *CTS*—that "[d]efendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved." *Joseph*, 223 F.3d at 1168. We therefore join the Second Circuit in holding that, regardless of whether *American Pipe* tolling is derived from courts' equity powers or from Rule 23, it does not apply to statutes of repose.

821 F.3d at 794–75.

Despite the ongoing controversy, both the Supreme Court and the Eleventh Circuit have described the *American Pipe* rule as one of equitable, not "legal," tolling. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 n.10, 131 S. Ct. 2368, 2379 n.10 (2011) (referring to the holding in *American Pipe* as "specifically grounded in policies of judicial administration"); *Young v. United States*, 535 U.S. 43, 49, 122 S. Ct. 1036, 1040 (2002) (citing *American Pipe* for the proposition that limitations periods are "customarily subject to equitable tolling"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n.3, 111 S. Ct. 453, 458 & n.3 (citing *American Pipe* as a case in which "equitable tolling" was used); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) (per curiam) (referencing the rule of "equitable tolling under *American Pipe*"). In *American Pipe* itself, the Supreme Court described the power to toll that it was applying as a "judicial power," 414 U.S. at 558, 94 S. Ct. at 768, and specifically noted that class certification had not been denied "for reasons of bad faith or frivolity," but for lack of numerosity, *id.* at 553, 94 S. Ct. at 766 (internal quotation marks omitted).

Other circuits have similarly described the rule as one of equitable tolling. *See, e.g.*, *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006) (referencing the "*American Pipe* . . . equitable tolling rule"); *Youngblood v. Dalzell*, 925 F.2d 954, 959 n.3 (6th Cir. 1991) (same). *See also Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126, 132 (D.D.C. 2015) (collecting cases

11

and noting that "district courts in the Fourth, Fifth, Seventh, and Eleventh Circuits have treated *American Pipe* as an equitable tolling doctrine").

The district court ultimately relied on these decisions in determining that the *American Pipe* rule is one of equitable tolling. *See Dusek*, 132 F. Supp. 3d at 1350. We affirm and hold that *American Pipe* tolling does not apply to the statute of repose at issue in this case. Appellants' right to bring the Section 20(a) claim expired, at the latest, on December 11, 2013, five years after Madoff was arrested and BLMIS was closed. *See* 28 U.S.C. § 1658(b)(2). They did not file their claim until March 28, 2014. Accordingly, their claims are time-barred and were properly dismissed.[6]

## B. RICO Claim

Under the Private Securities Litigation Reform Act ("PSLRA"), "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [of the federal RICO Act]." 18 U.S.C. § 1964(c) (2014). A plaintiff may not dodge this bar by pleading other offenses as predicate acts in a civil RICO action if the claim is based on conduct that would have been actionable as securities fraud. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) (finding

---

[6] In light of this conclusion, the Court need not address or decide Appellees' contentions that they were not "control persons" or that the Appellants lack standing and were not part of the class in *Shapiro*.

Madoff-related RICO claim based on alleged conduct that would have been actionable as securities fraud barred by the PSLRA).

Appellees' claims of mail and wire fraud are clearly based upon the fraudulent conduct of Madoff and BLMIS relating to securities investments. The district court was therefore correct in dismissing the federal RICO claim because it is precluded by the PSLRA. *See Dusek*, 132 F. Supp. 3d at 1353.

Accordingly, the judgment of the district court is AFFIRMED.